Opinion
CHIN, J.
Pursuant to Evidence Code[1] section 1108, pattern jury instruction CALCRIM No. 1191 explains to a jury that it may consider a defendant’s uncharged sexual offense as evidence of his or her propensity to commit a charged sexual offense. Relying on a recent case, the trial court here modified CALCRIM No. 1191 to permit the jury to consider the defendant’s charged sexual offenses as evidence of his propensity to commit the other charged sexual offenses. (See People v. Wilson (2008) 166 Cal.App.4th 1034, 1052 [83 Cal.Rptr.3d 326] (Wilson).) The jury subsequently convicted defendant Juan Jose Villatoro of various counts of kidnapping, robbery, and rape against five women.
On appeal, defendant challenged the modified instruction based on People v. Quintanilla (2005) 132 Cal.App.4th 572 [33 Cal.Rptr.3d 782] (Quintanilla), which held that charged offenses could not be considered as propensity evidence under a similar provision (§ 1109) and its corresponding jury instruction (CALJIC No. 2.50.02). Relying in part on Wilson, the Court of Appeal below rejected defendant’s challenges to the modified instruction. For reasons that follow, we affirm the Court of Appeal’s judgment.
Factual and Procedural Background
Defendant was charged with committing various offenses, including rape, against five women between 2005 and 2008.

R.I.

On May 25, 2005, prostitute R.I. agreed to have sex with defendant for $80 and got into his car. After driving to a nearby residential area, defendant stopped the car, pulled out a gun from the backseat, and told the victim not to *1157 move or look at him or else he would kill her. Defendant forced R.I. to have vaginal and anal intercourse, then whipped her on the back for 20 minutes with electrical extension cords. He then took her cell phone and told her to get out of the car.
The bruises on RJ.’s back and vagina, along with the swelling in her legs, were consistent with her account of the attack. DNA samples taken from R.I. were later found to match defendant’s DNA. R.I. subsequently identified defendant from a six-pack photographic lineup.

N.G.

On June 21, 2006, 18-year-old N.G. was walking home late at night when defendant drove up in a car, pointed a gun at her, and told her to get in his car or else he would kill her. She got in and defendant drove off. He told her not to look at him, and held a razor to her ribcage as he drove. When he stopped in a residential area, he forced N.G. to have vaginal intercourse, and inserted his fingers into her vagina. Defendant took the victim’s cell phone, rings, and sunglasses, and then let her go.
DNA samples taken from N.G. were later determined to match defendant’s DNA. Almost two years after the attack, N.G. identified defendant from a six-pack photographic lineup.

Beverly G.

On February 3, 2008, prostitute Beverly G. agreed to have sex with defendant for $100. After she got into his car, defendant drove a short distance to a residential area. When he stopped the car, he pulled out a stun gun, activated it, and told Beverly not to move. He held the stun gun to her neck and screamed, “Don’t look at me.” He forced her to have vaginal and anal intercourse. Whenever Beverly looked at defendant, he slapped her or spat at her. After he was done, defendant told her to get out; she did not retrieve her belongings before getting out of the car.
Beverly eventually told police what had happened and identified defendant from a six-pack photographic lineup on May 2, 2008.

C.C.

In the early morning of February 10, 2008, defendant offered a ride to C.C., who was waiting at a bus stop. She accepted the ride because another man had been harassing her. C.C. asked defendant to drive her to Hollywood. When she noticed he had driven to Santa Monica, she became worried and *1158 nervous. She asked defendant to stop so that she could use a restroom. Defendant pulled over, handed C.C. some baby wipes, and told her to relieve herself in the grass. Defendant watched as she did so.
After defendant promised to take her home, C.C. got back into his car. He then pulled out a Taser or stun gun, activated it, and placed it near her throat. He ordered C.C. to take off her pants, which she did. He told her not to look at him, punched her in the face, and made her cover her head with her shirt. Defendant forced C.C. to have vaginal intercourse, bit her left breast, and pulled out some of her hair. He took her purse.
C.C.’s physical injuries—a bite mark and suction injury on C.C.’s left breast—were consistent with her account of the attack. DNA samples taken from her body were later found to match defendant’s DNA. In April 2008, C.C. identified defendant from a six-pack photographic lineup.

Kimberly J.

[2]

On April 4, 2009, around 3:00 a.m., prostitute Kimberly J. got into defendant’s car. He drove a few blocks before parking the car on a secluded street. He then jumped on top of Kimberly and said, “Shut up or I’m going to kill you.” He pulled out a stun gun and turned it on to scare her. After defendant ripped off Kimberly’s underwear and pulled down her skirt, he forced her to have vaginal intercourse. He repeatedly pushed her head and told her not to look at him. When defendant was done, he took Kimberly’s jewelry and cell phone and ordered her out of the car.
Kimberly’s physical injuries—vaginal bruising and abrasions on her hymen—were consistent with her account of the attack. DNA samples were taken from Kimberly, which were later determined to match defendant’s DNA. Kimberly helped police create a composite drawing of her attacker, and she later identified defendant from a six-pack photographic lineup.
At trial, the victims (all but Kimberly J.) testified about what had happened to them, and indicated they did not know one another before they were attacked. Without objection, the trial court instructed the jury with a modified version of CALCRIM No. 1191, which permitted the jury to use evidence of defendant’s guilt of one of the charged sexual offenses as evidence of his propensity to commit the other charged sexual offenses. The jury convicted defendant of five counts of rape, one as to each victim. It also convicted him *1159 of one count of kidnapping to commit another crime as to N.G.; and four counts of robbery, one each as to N.G., Beverly G., C.C., and Kimberly J. The jury also found true allegations that defendant (1) personally used a firearm during the rapes of R.I. and N.G., and during the kidnapping and robbery of N.G. and (2) personally used a deadly or dangerous weapon as to all of the five rapes and as to the robberies of C.C. and Kimberly J. The trial court sentenced defendant to 153 years to life. Defendant appealed.
Relying on Quintanilla, supra, 132 Cal.App.4th 572, defendant challenged the modified instruction on several grounds: the instruction violated section 1108 because it allowed the jury to use charged, rather than uncharged, offenses to prove his disposition to commit the other charged offenses; because it did not identify what standard of proof was required before the jury could consider the charged offense as propensity evidence; and because it did not reiterate that despite the inferences the jury could draw from its finding that a charged offense occurred, defendant still retained the presumption of innocence. Based in part on Wilson, supra, 166 Cal.App.4th 1034, the Court of Appeal rejected defendant’s challenges to the modified instruction. We granted defendant’s petition for review.
Discussion
A. Character Evidence and Section 1108
Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person’s conduct on a specified occasion. (§ 1101, subd. (a) (section 1101(a)); Cal. Law Revision Com. com., reprinted at 29B pt. 3B West’s Ann. Evid. Code (2009 ed.) foil. § 1101, p. 221; see People v. Carter (2005) 36 Cal.4th 1114, 1147 [32 Cal.Rptr.3d 759, 117 P.3d 476].) This ban against admitting character evidence to prove conduct, however, does not prohibit admission of specific acts of misconduct to establish a material fact like intent, common design or plan, or identity (§ 1101, subd. (b)), and does not affect the admissibility of evidence regarding the credibility of a witness (id., subd. (c)). (See People v. Falsetta (1999) 21 Cal.4th 903, 911 [89 Cal.Rptr.2d 847, 986 P.2d 182] (Falsetta).) The Legislature has also created specific exceptions to the rule against admitting character evidence in cases involving sexual offenses (§ 1108, subd. (a)), and domestic violence, elder or dependent abuse, or child abuse (§ 1109, subd. (a)(1)—(3)). (See § 1101(a).)
As relevant here, section 1108, subdivision (a), provides: “In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant’s commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible *1160 pursuant to Section 352.”[3] Enacted in 1995, section 1108 “implicitly abrogates prior decisions of this court indicating that ‘propensity’ evidence is per se unduly prejudicial to the defense.” (Falsetta, supra, 21 Cal.4th at p. 911.) “As the legislative history indicates, the Legislature’s principal justification for adopting section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant’s possible disposition to commit sex crimes.” (Id. at p. 915.)
Nearly every published opinion interpreting section 1108 (including some from this court) has recognized that this provision allows, when proper, evidence of prior uncharged sexual offenses to prove propensity. (See, e.g., People v. Reliford (2003) 29 Cal.4th 1007, 1012-1013 [130 Cal.Rptr.2d 254, 62 P.3d 601] (Reliford); Falsetta, supra, 21 Cal.4th at pp. 917-918; People v. Fitch (1997) 55 Cal.App.4th 172, 181-182 [63 Cal.Rptr.2d 753].) The pattern jury instruction explaining the application of section 1108 (CALCRIM No. 1191) likewise refers to uncharged sexual offenses. With regard to the admission of uncharged sexual offenses, we have held that section 1108 satisfies the requirements of due process (Falsetta, supra, 21 Cal.4th at p. 917), and that CALJIC No. 2.50.01, the predecessor to CALCRIM No. 1191, is a correct statement of the law (Reliford, supra, 29 Cal.4th at pp. 1012-1016). (See People v. Cromp (2007) 153 Cal.App.4th 476, 480 [62 Cal.Rptr.3d 848] [“no material difference” between CALJIC No. 2.50.01 & CALCRIM No. 1191].) Notwithstanding their repeated references to uncharged sexual offenses, these cases significantly did not consider whether section 1108 extended to charged offenses as well. We consider that issue here.
Section 1108 provides that in a sexual offense case, “evidence of the defendant’s commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.” By its terms, the statute does not distinguish between charged or uncharged sexual offenses, and refers instead to “another sexual offense or offenses.” (Italics added.) As used here, the ordinary meaning of the word “another” is “being one more in addition to one or a number of the same kind: ADDITIONAL.” (Webster’s 3d New Internat. Dict. (2002) p. 89; see Wasatch Property Management v. Degrate (2005) 35 Cal.4th 1111, 1121-1122 *1161 [29 Cal.Rptr.3d. 262, 112 P.3d 647] [“When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word.”].) This definition of “another” contains no limitation, temporal or otherwise, to suggest that section 1108 covers only offenses other than those for which the defendant is currently on trial.
Section 1108’s qualifying language that such evidence is “not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352,” also does not mandate that the sexual offense be uncharged. The argument is that evidence relating to the charged sexual offenses which defendant is currently facing is independently admissible and would not be rendered inadmissible by either section 1101 or section 352; in other words, the phrase makes no sense if applied to charged offenses. (See cone. & dis. opn. of Corrigan, J., post, at pp. 1173, 1178.) We are not persuaded.
1. “Not Made Inadmissible by Section 1101”
First, we must construe the words of sections 1101 and 1108, which cross-reference each other, consistently. (See Isobe v. Unemployment Ins. Appeals Board (1974) 12 Cal.3d 584, 590-591 [116 Cal.Rptr. 376, 526 P.2d 528].) Though section 1101 speaks in terms of the admissibility or inadmissibility of evidence, we have held that the provision (§ 1101(b)) applies not only to evidence of uncharged misconduct (People v. Kelly (2007) 42 Cal.4th 763, 782-783 [68 Cal.Rptr.3d 531, 171 P.3d 548]; People v. Ewoldt (1994) 7 Cal.4th 380, 393 [27 Cal.Rptr.2d 646, 867 P.2d 757] (Ewoldt)), but also to evidence (already admitted) of charged offenses (People v. Catlin (2001) 26 Cal.4th 81, 153 [109 Cal.Rptr.2d 31, 26 P.3d 357] (Catlin); People v. Ochoa (1998) 19 Cal.4th 353, 410 [79 Cal.Rptr.2d 408, 966 P.2d 442] (Ochoa)). Likewise, though section 1108 states that evidence is “not made inadmissible by Section 1101,” we similarly construe this provision to extend to evidence of both uncharged and charged sexual offenses. (See Housing Authority v. Van de Kamp (1990) 223 Cal.App.3d 109, 116 [272 Cal.Rptr. 584] [“Words or phrases common to two statutes dealing with the same subject matter must be construed in pari materia to have the same meaning.”].)
Also, in making clear that evidence of prior uncharged sex offenses is not made inadmissible by section 1101(a)’s ban on propensity evidence to prove conduct (see Falsetto, supra, 21 Cal.4th at p. 911), the qualifying language is not thereby rendered meaningless with respect to evidence of charged sex offenses. As a general matter, evidence may have multiple purposes and, consequently, may be “admissible ... for one purpose and . . . inadmissible ... for another purpose.” (§ 355; see People v. Pierce (1969) 269 Cal.App.2d 193, 203 [75 Cal.Rptr. 257].) Because section 1101(a)’s prohibition against propensity evidence is “absolute where it applies” (People v. *1162 Alcala (1984) 36 Cal.3d 604, 631 [205 Cal.Rptr. 775, 685 P.2d 1126]), before section 1108 was enacted, evidence admitted to prove the defendant’s guilt of a sex offense could not be considered as evidence of the defendant’s propensity to commit the other charged sex offenses (see Falsetto, supra, 21 Cal.4th at p. 915 [§ 1108’s “limited exception to the historical rule against propensity evidence”]). Thus, in authorizing the jury’s use of propensity evidence in sex offense cases, section 1108 necessarily extends to evidence of both charged and uncharged sex offenses, affirming that such evidence is not “made inadmissible by Section 1101.”
2. Section 352 and Quintanilla
Second, with respect to section 352, defendant relies heavily on the reasoning in Quintanilla, supra, 132 Cal.App.4th 572, and insists that by incorporating a section 352 analysis, section 1108 effectively distinguishes between charged and uncharged offenses because the former cannot be excluded under section 352. Defendant therefore reasons that the Legislature must have intended section 1108 to apply only to uncharged offenses and asserts that the provision’s legislative history supports this interpretation. We disagree.
Quintanilla dealt with the parallel provision governing propensity evidence in domestic violence cases (§ 1109).[4] The trial court there modified the pattern jury instruction implementing section 1109 (CALJIC No. 2.50.02), and instructed the jury that it could infer the defendant’s criminal propensity to commit charged domestic violence offenses from other charged domestic violence offenses (Quintanilla, supra, 132 Cal.App.4th at p. 581). Relying on our decision in Falsetto, supra, 21 Cal.4th 903, the Quintanilla majority concluded that section 1109 permitted only the admission of uncharged offenses. (Quintanilla, supra, 132 Cal.App.4th at pp. 582-583.) The majority rejected the Attorney General’s argument that section 1109’s plain terms did not differentiate between charged or uncharged crimes, instead emphasizing that the provision “expressly conditions the admissibility of propensity evidence on the trial court’s power to evaluate the evidence under section 352.” (Quintanilla, supra, 132 Cal.App.4th at p. 583.) Defendant here advances the same section 352 argument in his briefing. By contrast, the Attorney General maintains that “it is not the express inclusion of the *1163 reference to section 352 that matters; rather, it is the availability of the weighing process.” We agree with the Attorney General.[5]
Section 1108’s legislative history reveals that the legislation was amended after it was introduced to include a specific reference to section 352. (Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended July 18, 1995.) “While [section] 1108 explicitly supersedes [section] 1101’s prohibition of evidence of character or disposition within its scope of application, it does not supersede other provisions of the Evidence Code, such as normal restrictions in hearsay and the court’s authority to exclude evidence presenting an overriding likelihood of prejudice under [section] 352. [Citations.] [][] ‘The amendment adopted at the Judiciary Committee hearing simply makes this point explicit in relation to [section] 352.' " (Assemblymember Rogan, letter of intent regarding Assem. Bill No. 882 (1995-1996 Reg. Sess.) Aug. 24, 1995, reprinted at 29B pt. 3B West’s Ann. Evid. Code (2009 ed.) foil. § 1108, p. 352, italics added (Rogan letter).)
Rather than imposing an additional hurdle to the admissibility of character evidence, as defendant suggests, the inclusion of section 352 merely makes “explicit” the point that section 1108 does not supersede section 352 or other provisions of the Evidence Code. In other words, even if section 1108 did not refer to section 352, the latter still serves as a limitation on the admission of all evidence. (See Ewoldt, supra, 7 Cal.4th at p. 404 [“to be admissible such evidence ‘must not contravene other policies limiting admission, such as those contained in Evidence Code section 352’ ”]; see also Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 15, 1995, p. 2 (Assembly Committee analysis) [legislation puts evidence of similar sexual offenses “on the same footing as other types of relevant evidence” not subject to a special exclusionary rule].)
Though recognizing that evidence of the charged offenses may not be excludable under section 352, the Court of Appeal below concluded that nothing precludes a trial court from considering section 352 factors when deciding whether to permit the jury to infer a defendant’s propensity based on this evidence. It explained; “Even where a defendant is charged with multiple sex offenses, they may be dissimilar enough, or so remote or unconnected to each other, that the trial court could apply the criteria of section 352 and determine that it is not proper for the jury to consider one or more of the charged offenses as evidence that the defendant likely committed any of the other charged offenses.” We agree. (See People v. Harris (1998) 60 Cal.App.4th 727, 736 [70 Cal.Rptr.2d 689] [“the ultimate object of the section *1164 352 weighing process is a fair trial”].) We discuss below the trial court’s section 352 analysis with respect to the modified instruction. (See post, at p. 1168.)
In short, we conclude nothing in the language of section 1108 restricts its application to uncharged offenses. Indeed, the clear purpose of section 1108 is to permit the jury’s consideration of evidence of a defendant’s propensity to commit sexual offenses. “The propensity to commit sexual offenses is not a common attribute among the general public. Therefore, evidence that a particular defendant has such a propensity is especially probative and should be considered by the trier of fact when determining the credibility of a victim’s testimony.” (Assem. Com. analysis, supra, p. 1 [purpose according to bill’s author]; Sen. Com. on Crim. Proc., Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 15, 1995, p. 2 (Senate Committee analysis) [same]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended June 27, 1995, p. 9 [same]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended July 18, 1995, p. 5 [same].) “[C]ase law clearly shows that evidence that [a defendant] committed other sex offenses is at least circumstantially relevant to the issue of his disposition or propensity to commit these offenses.” (Falsetta, supra, 21 Cal.4th at p. 915; see People v. Jones (1954) 42 Cal.2d 219, 223 [266 P.2d 38] [“In the determination of probabilities of guilt, evidence of character is relevant.”].) In light of this clear purpose, we perceive no reason why the Legislature would exclude charged sexual offenses from section 1108’s purview, and no indication that it did so in either the text of section 1108 or its legislative history. Whether an offense is charged or uncharged in the current prosecution does not affect in any way its relevance as propensity evidence. Indeed, section 1108’s legislative history explains that “ ‘admission and consideration of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible.’ ” (Rogan letter, supra, 29B pt. 3B West’s Ann. Evid. Code, p. 352, italics added; see ibid. [“ ‘This includes consideration of the other sexual offenses as evidence of the defendant’s disposition to commit such crimes . . . .’ ”].)[6]
*1165 In cautioning against the “bootstrapping of verdicts” (see conc. & dis. opn. of Corrigan, J., post, at pp. 1175, 1179) and the possibility that the jury may “simply conclude that because it found the defendant guilty of one count, he must be guilty of the others” {id. at p. 1170), the concurring and dissenting opinion merely identifies the general concern against allowing a jury to consider propensity evidence in a criminal case (see People v. Manriquez (2005) 37 Cal.4th 547, 579-580 [36 Cal.Rptr.3d 340, 123 P.3d 614] [modified CALJIC No. 17.02 adequately addressed defendant’s concern jury might base one or more verdicts on multiple murder counts on “ ‘supposed propensity to commit murder’ ”]). However, in a sex offense case, as here, the Legislature has made the careful determination that evidence the defendant committed one or more sex offenses may be properly considered pursuant to section 1108. (See ante, at p. 1164; see also Falsetta, supra, 21 Cal.4th at p. 920 [“evidence of a defendant’s other sex offenses constitutes relevant circumstantial evidence that he committed the charged sex offenses”].)
More to the point, the instruction here (as set out in full below) did not permit the jury to convict defendant of one count based simply on its guilty “verdict” on any other counts. (Cf. conc. & dis. opn. of Corrigan, J., post, at pp. 1179-1180.) It is not the verdict itself, but rather the jury’s factual finding that defendant has committed a sex offense, that the jury relies on to draw an inference of disposition or propensity. Specifically, like an instruction based on uncharged sex offenses, the modified CALCRIM No. 1191 explained to the jury that if it decided that defendant had committed a charged sex offense, “from that evidence” it could conclude that defendant had a disposition to commit the other charged sex offenses, and that based on that decision, the jury could also conclude that defendant was likely to and did commit the other charged sex offenses. (See post, at p. 1167; see also Reliford, supra, 29 Cal.4th at p. 1013 [addressing propriety of CALJIC No. 2.50.01; “jury may use ‘the evidence of prior sex crimes to find that defendant had a propensity to commit such crimes, which in turn may show that he committed the charged offenses’ ”].) Ultimately, the modified instruction affirmed that evidence that the defendant committed a charged offense “is not sufficient by itself to prove the defendant is guilty of another charged offense.”
To the extent the Legislature has given greater attention to evidence of uncharged (as compared to charged) sex offenses under section 1108, such focus is not surprising.• Shortly before section 1108’s enactment, we strongly cautioned that “[e]vidence of uncharged offenses ‘is so prejudicial that its admission requires extremely careful analysis.’ ” (Ewoldt, supra, 7 Cal.4th at p. 404; see People v. Daniels (1991) 52 Cal.3d 815, 856 [277 Cal.Rptr. 122, 802 P.2d 906] [“this type of evidence can be so damaging”].) In enacting section 1108, the Legislature recognized that “[g]iven its highly inflammatory nature, uncharged misconduct is admissible after various safeguards are met. This is done in recognition that when this type of evidence is admitted, the *1166 odds of conviction increase dramatically.” (Sen. Com. analysis, supra, p. 5.) Understandably, the Legislature took special care to ensure that in allowing the jury to consider propensity evidence, section 1108 would withstand scrutiny with respect to uncharged sex offenses. (See Falsetta, supra, 21 Cal.4th at p. 917 [“ ‘By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed
Allowing a jury to draw an inference of propensity from other charged offenses is also consistent with the use of charged offenses under section 1101, subdivision (b). As noted, section 1101, subdivision (b), permits the admission of other crimes evidence to establish a material fact like intent, common design or plan, or identity. (See ante, at p. 1159.) We have made clear that juries may consider evidence of other charged offenses for the purposes outlined in subdivision (b), as well as to establish the charged offenses, if the evidence would have been cross-admissible had the charges been tried separately. (Catlin, supra, 26 Cal.4th at p. 153 [“under Evidence Code section 1101 the jury properly could consider other-crimes evidence in connection with each count, and also could consider evidence relevant to one of the charged counts as it considered the other charged count”]; Ochoa, supra, 19 Cal.4th at p. 410 [“evidence of each assault could be used under Evidence Code section 1101, subdivision (b), to show defendant’s mental state for each other assault, namely his intent”].) It would be anomalous to permit consideration of such evidence under section 1101 but not under section 1108, when the latter eases the restrictions of the former. (See Isobe v. Unemployment Ins. Appeals Board, supra, 12 Cal.3d at pp. 590-591.) In his separate opinion in Quintanilla, Justice Pollak also succinctly explained another incongruity of prohibiting the consideration of charged offenses as character evidence: “Indeed, it is entirely illogical to permit the prosecution to show propensity to commit domestic violence with evidence of prior similar misconduct that was not felt to warrant prosecution in the same case, but to prohibit the use of Such evidence when the conduct is deemed sufficiently aggravated to justify a separate charge.” (Quintanilla, supra, 132 Cal.App.4th at p. 586 (conc. opn. of Pollak, J.).)
It is true that section 1108 does not mention drawing a propensity inference from the evidence of charged sex offenses (see conc. & dis.. opn. of Corrigan, J., post, at pp. 1169, 1173, 1175-1177, 1181-1182), because, in fact, the statute makes no reference to inferences at all. Nonetheless, despite no mention of inferences, we concluded that pursuant to section 1108, CALJIC No. 2.50.01 properly instructed that jurors may “infer the defendant has a disposition to commit sex crimes from evidence the defendant has committed other sex offenses,” and that jurors “may—but are not required to— infer from this predisposition that the defendant was likely to commit and did *1167 commit the charged offense.” (Reliford, supra, 29 Cal.4th at pp. 1012-1013 [evidence of uncharged sex offenses].) These “reasonable” and “legitimate” inferences (ibid.) are made no less relevant merely because the evidence is based on charged, rather than uncharged, sex offenses (id. at p. 1013 [“when the evidence is admissible, it may support an inference—as the instruction provides—that the defendant is predisposed to commit the sex offenses”]).
B. Modified CALCRIM No. 1191
We next address whether the trial court erred in instructing the jury with a modified version of CALCRIM No. 1191. Defendant argues that the modified instruction failed to designate clearly what standard of proof applied to the charged offenses before the jury could draw a propensity inference from them. He insists that without such guidance, a juror could have used any standard of proof, or no standard at all, to convict him based on even a minimal amount of evidence supporting another sexual offense, thus depriving him of the presumption of innocence. We disagree.
The modified instruction given here provided: “The People presented evidence that the defendant committed the crime of rape as alleged in counts 2, 4, 7, 9, 12 and 15 and the crime of sodomy as alleged in count 14. These crimes are defined for you in the instructions for these crimes, [f] If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to and did commit the other offenses of rape and sodomy charged. If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. The People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge.”[7]
Unlike the standard pattern instruction CALCRIM No. 1191, which refers to the use of uncharged offenses, the modified instruction did not provide that *1168 the charged offenses used to prove propensity must be proven by a preponderance of the evidence. Instead, the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity. Thus, there was no risk the jury would apply an impermissibly low standard of proof. (Cf. Quintanilla, supra, 132 Cal.App.4th at p. 583 [referring to “mental gymnastics” of having jury apply beyond reasonable doubt standard for charged offense but preponderance of evidence standard for purposes of propensity].) Moreover, the court instructed the jury with CALCRIM No. 220, which defines the reasonable doubt standard and reiterates that the defendant is presumed innocent; it also explains that only proof beyond a reasonable doubt will overcome that presumption. The modified version of CALCRIM No. 1191 did not impermissibly lower the standard of proof or otherwise interfere with defendant’s presumption of innocence.
Defendant also argues that the trial court did not undertake a section 352 analysis here before giving the modified instruction. In concluding to the contrary, the Court of Appeal first recognized that the record does not include an express statement by the trial court that it undertook such an analysis. Noting that an express statement is not required (see People v. Padilla (1995) 11 Cal.4th 891, 924 [47 Cal.Rptr.2d 426, 906 P.2d 388] (Padilla)), the Court of Appeal next inferred the trial court’s “implicit weighing,” apparently based on the following statement the trial court made to the parties: “[CALCRIM No.] 1191, for the record, I’ve given you both a copy based on the instruction given in Wilson.” The Court of Appeal concluded; “The trial court’s express reliance on a key case in this area, considered in light of the entire record, allows us to infer that the trial court gave the instruction because it found that all the requirements of the holding in Wilson, including a section 352 analysis, had been satisfied.” The Attorney General adds that because section 1108 expressly refers to section 352, the trial court “presumably” conducted the requisite section 352 analysis.
We agree with the Court of Appeal that the trial court implicitly conducted a section 352 analysis. “[W]e are willing to infer an implicit weighing by the trial court on the basis of record indications well short of an express statement.” {Padilla, supra, 11 Cal.4th at p. 924, italics added.)
In any event, any error in failing to conduct such an analysis was harmless. (Padilla, supra, 11 Cal.4th at p. 925 [“assuming the trial court did not evaluate the evidence under Evidence Code section 352, had he done so he would have admitted it in any event” (italics omitted)].) As the Court of Appeal pointed out, although the victims’ accounts of their respective attacks had minor differences, their versions were strikingly similar in various respects. Defendant forced or lured each woman into his car and drove to a *1169 residential area, where he forced each woman to submit to sexual acts by pointing a weapon at them. He yelled at each victim not to look at him, and afterwards ordered each out of his car. The evidence was highly probative of defendant’s propensity to commit such crimes, and its value substantially outweighed any prejudice.
In sum, under the facts of this case, the trial court did not err in giving the modified instruction. We do not decide, however, whether courts should give such an instruction in the future.
Conclusion
Based on the foregoing, we affirm the Court of Appeal’s judgment.
Cantil-Sakauye, C. J., Kennard, J., and Baxter, J., concurred.

 Further statutory references are to the Evidence Code unless otherwise noted.

 Kimberly refused to testify at trial and the trial court, over defense counsel’s objection, declared her unavailable under section 240. Her preliminary hearing testimony, which provided details of the incident, was read into the record at trial. Though the admissibility of her testimony was at issue below, it is not an issue here.

 Section 352 provides: “The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.”

 For purposes of the issue presented here, the precise distinctions between section 1108 and section 1109 are not pertinent. (See People v. Brown (2000) 77 Cal.App.4th 1324, 1333 [92 Cal.Rptr.2d 433] [“sections 1108 and 1109 can properly be read together as complementary portions of the same statutory scheme”].)

 We disapprove People v. Quintanilla, supra, 132 Cal.App.4th 572, to the extent it is inconsistent with the views expressed in this opinion.

 Notwithstanding isolated references to “uncharged crimes” and “uncharged sexual acts” in an early analysis by the Senate Committee on Criminal Procedure (see Sen. Com. analysis, supra, p. 1), section 1108’s legislative history reflects that the Legislature did not consistently use the term “uncharged,” and more importantly, the Legislature ultimately did not make such a distinction between “uncharged” and “charged” in the text of section 1108. Moreover, contrary to the concurring and dissenting opinion’s suggestion (see cone. & dis. opn. of Corrigan, J., post, at pp. 1174-1175), the Legislature’s references to “other” (“other victims” and defendant’s commission of crimes “on other occasions”) may also mean that the case in which a propensity inference will apply involves multiple victims and multiple sex crimes charged against the defendant, as here.

 Although the written version of the modified instruction included this last sentence, it also referred to “specific intent” as follows: “The People must still prove each element of every charge beyond a reasonable doubt and must prove it beyond a reasonable doubt before you may consider one charge as proof of specific intent of another charge.” (Italics added.) Because the prosecution did not argue that evidence of the other charged offenses could be proof of defendant’s specific intent, we, like the Court of Appeal below, have not considered this limitation when evaluating the instruction. In that regard, we reject defendant’s contention that the modified instruction included the reasonable doubt standard only with respect to proof of a “specific intent of another charge.”