Filed 10/10/19 Certifed for Publication 10/11/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G055942 |
|       v. | (Super. Ct. No. 15CF1683) |
| CESAR MENESES, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Denise de Bellefeuille, Judge. (Retired Judge of the Santa Barbara Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Seth M. Friedman and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

INTRODUCTION

Defendant Cesar Meneses appeals from the judgment of conviction entered after a jury found him guilty of four counts of committing a lewd act upon a child under 14 years of age and found true, as to each count, the multiple victim sentencing enhancement allegation. Meneses argues (1) the trial court erred by instructing the jury regarding consideration of evidence of charged sex offenses with CALCRIM No. 1191B and (2) the prosecutor committed error[1] in her closing and rebuttal arguments. Meneses further argues that to the extent his trial counsel's failure to object on these grounds results in forfeiture of these arguments on appeal, he received ineffective assistance of counsel.

We affirm. We follow *People v. Villatoro* (2012) 54 Cal.4th 1152, 1159 (*Villatoro*) in concluding the trial court properly instructed the jury with CALCRIM No. 1191B. Although one statement in the prosecution's rebuttal argument, when viewed in isolation, did misstate the law, we conclude there was no prosecutorial error because, in the context of the entire argument and jury instructions, it was not reasonably likely the jury understood or applied the statement in an improper or erroneous manner.


FACTS

D.V. regularly visited and attended family gatherings at a house where her great aunt and her great aunt's husband, Meneses, lived. When D.V. was six or seven years old, Meneses began touching her in her vaginal area when D.V. visited the house. Meneses touched D.V. a total of 10 times before she stopped going to that house when she was 11 or 12 years old.

---

[1] We use the term prosecutorial error rather than prosecutorial misconduct because prosecutorial misconduct "'is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667 (*Centeno*).) "'A more apt description of the transgression is prosecutorial error.'" (*Id.* at p. 667.)

D.V.'s cousin, J.T., also attended family gatherings at the house. Meneses touched J.T.'s vaginal area a total of 10 times from the time J.T. was seven years old until she was nine years old. D.V. and J.T. testified that on occasion Meneses called them out to the garage that he used as his bedroom and touched them both on the same occasion. He told them not to tell anyone about what he was doing or "something bad would happen."

Another cousin, C.C., testified that when she was eight or nine years old, she would sit on Meneses's lap and he would tickle her; on one occasion, he tickled her close to her breast and on another occasion, he touched her thigh.

PROCEDURAL HISTORY

Meneses was charged in an information with 10 counts of committing a lewd act upon a child under 14 years of age in violation of Penal Code section 288, subdivision (a). Counts 1 through 3 were alleged to have been committed against D.V., counts 4 through 6 were alleged to have been committed against J.T., and counts 7 through 10 were alleged to have been committed against C.C. As to each count, the information alleged, pursuant to Penal Code section 667.61, subdivisions (b) and (e), that Meneses committed an offense specified in section 667.61, subdivision (c) against more than one victim.

The jury found Meneses guilty on counts 1, 2, 4, and 5, and found true the multiple victim sentencing enhancement alleged as to each of those counts. The trial court imposed a total prison sentence of 15 years to life. Meneses appealed.

3

## DISCUSSION

### I.

### CALCRIM No. 1191B

Meneses argues the trial court erred by instructing the jury with CALCRIM No. 1191B because it "allowed the jury to rely on currently charged offenses to find that [Meneses] had committed other currently charged offenses" and thus "violated his Fourteenth Amendment right to due process of law." Meneses's argument is without merit.

The trial court instructed the jury on its consideration of evidence of charged sex offenses with CALCRIM No. 1191B as follows: "The People presented evidence that the defendant committed the crimes of Lewd Act Upon a Child Under 14 as charged in Counts 1-10. [¶] If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit, and did commit, the other sex offenses charged in this case. [¶] If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge beyond a reasonable doubt."

In his appellate opening brief, Meneses acknowledges that in *Villatoro, supra,* 54 Cal.4th at pages 1156 and 1167 through 1169, the California Supreme Court held that Evidence Code section 1108 permits the jury to draw a propensity inference

4

from currently charged sex offenses, and "approved giving a modified version of CALCRIM No. 1191, similar to the instruction used in this case."[2]

In his appellate opening brief, Meneses acknowledges that "this court is bound to follow the precedent set in *Villatoro*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450,455.)" He explains he has raised this issue on appeal "to preserve his federal constitutional claim that allowing a jury to use charged offenses to infer that he committed the other offenses charged in the same case violates his due process right to a fundamentally fair trial under the Fourteenth Amendment. [Meneses] must also raise this issue in the Court of Appeal in order to request the California Supreme Court to reconsider its decision in *Villatoro* in light of the dissent of Justice Corrigan joined by Justice Werdegar and the dissent of Justice Liu."

Meneses is correct that we are bound to follow California Supreme Court precedent pursuant to *Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at page 455, in concluding the trial court did not err by instructing the jurors they may consider

---

[2] In *Villatoro, supra,* 54 Cal.4th at page 1164, the Supreme Court held: "[W]e conclude nothing in the language of [Evidence Code] section 1108 restricts its application to uncharged offenses. Indeed, the clear purpose of section 1108 is to permit the jury's consideration of evidence of a defendant's propensity to commit sexual offenses. 'The propensity to commit sexual offenses is not a common attribute among the general public. Therefore, evidence that a particular defendant has such a propensity is especially probative and should be considered by the trier of fact when determining the credibility of a victim's testimony.' [Citations.] '[C]ase law clearly shows that evidence that [a defendant] committed other sex offenses is at least circumstantially *relevant* to the issue of his disposition or propensity to commit these offenses.' [Citations.] In light of this clear purpose, we perceive no reason why the Legislature would exclude charged sexual offenses from section 1108's purview, and no indication that it did so in either the text of section 1108 or its legislative history. Whether an offense is charged or uncharged in the current prosecution does not affect in any way its relevance as propensity evidence. Indeed, section 1108's legislative history explains that '"admission *and consideration* of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible."'"

5

proven similar charged sex offenses as evidence of Meneses's propensity to commit other charged offenses.

Because we find CALCRIM No. 1191B was properly given to the jury, we also reject Meneses's argument that his trial counsel was ineffective for failing to object to that instruction at trial as such a request would have been futile given the trial court's obligation to follow *Villatoro, supra,* 54 Cal.4th 1152.

## II.
### PROSECUTORIAL ERROR

Meneses argues the prosecutor erred by "misleading jurors in her closing arguments to believe the People's burden of proof beyond a reasonable doubt could be met based on a reasonable interpretation of the evidence. This error violated [Meneses]'s right to a fair trial under the Fourteenth Amendment and requires the judgment be reversed." Meneses argues that during the closing and rebuttal arguments, the prosecutor misstated the burden of proof three times.

First, at the end of the closing argument, the prosecutor stated:

"So again, this is made very simple on the verdict forms. There's just an allegation at the bottom. So again, you can review things and decide things in any order you want. I just give my suggestions. But my suggestion is go through and decide the charged counts. When you find guilty on one, then like I said, you can use that propensity evidence.

"But then you go through at the end and when you have guilty, you look, do we have J[.T.] and D[.V.]? If you have two different victims—D[.V.] and C[.C.]— whatever it is. Once there's two different victims, then those are guilty, or true on the multiple victim finding.

6

"As you're going through the evidence, don't be afraid to ask yourself, does this information help me to determine the facts or is it confusing the issue or misleading me? And ask yourself, *is this reasonable*?

"Like the judge told you, I have the burden of proof so [Meneses's counsel] gets the opportunity to talk to you now, and at the conclusion of rebuttal I'll be asking you to find the defendant guilty of all counts." (Italics added.)

Second, toward the beginning of the rebuttal argument, the prosecutor discussed the reasonable doubt burden of proof: "It's a very important standard. It's not an impossible standard. It's not possible or imaginary doubt. It's not beyond a shadow of a doubt. It's to the exclusion of a reasonable doubt. It's not a time qualification." The prosecutor then stated: "*You must reject any unreasonable interpretation. And if there's one reasonable interpretation, you must convict.*" (Italics added.)

Finally, toward the end of the rebuttal argument, the prosecutor addressed testimony regarding the response by D.V.'s father to being informed of Meneses's lewd conduct with D.V. Specifically, the prosecutor addressed the decision by D.V.'s father to take D.V. along to a fundraiser at Meneses's house designed to raise funds to pay for medical expenses incurred following a car accident involving D.V.'s brother. The prosecutor stated: "He only took D[.V.] back to the defendant's house under one exceptional [*sic*], as I recall. This was a . . . this was a situation in which his son almost died. Was in a coma for three weeks. I'm sure that was a financial strain and emotional strain on their direct family and beyond. And so under extraordinary circumstances he took D[.V.] over there and said hey, stay near me. [¶] *When you look at all of these facts, there is only one reasonable interpretation.* This family has done something very difficult. The easy thing to do in this case would have been for the parents to get the kids to recant. That would have been the easy thing." (Italics added.)

Meneses argues, "[t]aken together, the prosecutor's remarks, just like those in *Centeno*, show she conflated the concepts of proof beyond a reasonable doubt with

7

rejecting an unreasonable interpretation of the evidence.  In doing so, the prosecutor misstated the law and misled the jurors to believe that a reasonable account of the evidence satisfied the People's burden of proof beyond a reasonable doubt."

A.

*Two of the Prosecutor's Challenged Statements Constituted Permissible Argument.*

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument.  [Citation.]  However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].'  [Citations.]  To establish such error, bad faith on the prosecutor's part is not required."  (*Centeno, supra,* 60 Cal.4th at p. 666.)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'"  (*Centeno, supra,* 60 Cal.4th at p. 667.)

A prosecutor's conduct violates the federal constitution when the conduct "'infects the trial with such unfairness as to make the conviction a denial of due process'"; that is, when the conduct is "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"  (*People v. Harrison* (2005) 35 Cal.4th 208, 242.)  A prosecutor's argument that does not render a criminal trial fundamentally unfair violates California law only if the conduct involves "'"'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"'"  (*Ibid.*)

Jurors may use common sense and good judgment in evaluating the weight of the evidence presented to them.  (*People v. Venegas* (1998) 18 Cal.4th 47, 80.)  Jurors may evaluate the reasonableness of witness testimony, as the jury was instructed in this

8

case with CALCRIM Nos. 226 and 333. The prosecutor may argue "reasonably possible interpretations to be drawn from the evidence." (*Centeno, supra,* 60 Cal.4th at p. 672.) "It is permissible to argue that the jury may reject impossible or unreasonable interpretations of the evidence and to so characterize a defense theory." (*Ibid.*) The prosecutor may "urge the jury to '"accept the reasonable and reject the unreasonable"'" in evaluating the evidence before it." (*Id.* at p. 673.)

Here, two of the three challenged statements by the prosecutor were permissible under those standards. During closing argument, the prosecutor did not err by urging the jurors to ask themselves whether the propensity evidence helped them to determine the facts or was confusing or misleading and to further ask themselves, "is this reasonable?" The prosecutor's argument asked the jury to view the evidence in a reasonable manner; it did not refer to the prosecutor's burden of proof.

Furthermore, the prosecutor's statement at the end of the rebuttal argument explained D.V.'s father's decision to take D.V. back to Meneses's house could be reasonably understood in light of the evidence D.V.'s brother was then in a coma and the family needed to attend the fundraiser at that house for medical expenses. The prosecutor's comment at the end of her rebuttal argument did not relate to the prosecution's burden of proof.

B.

*The Prosecutor's Challenged Statement at the Beginning of the Rebuttal Argument Did Not Constitute Error in the Context of the Entire Argument and Jury Instructions.*

The prosecutor's challenged statement made at the beginning of the rebuttal argument raises questions under *Centeno, supra,* 60 Cal.4th 659. While a prosecutor may appeal to the jurors to use their common sense, experience, and reason to evaluate the evidence and assess witness credibility, a prosecutor may not argue or even suggest the prosecution's burden of proof is satisfied if the prosecution's evidence presents a reasonable account. (*Id.* at p. 672.) A prosecutor may argue that defense interpretations

9

of the evidence are unreasonable, but may not argue that deficiencies in the defense evidence can make up for shortcomings in the prosecution's case. (*Id.* at p. 673.) The prosecutor may not "confound[] the concept of rejecting unreasonable inferences with the standard of proof beyond a reasonable doubt." (*Ibid.*)

In *Centeno, supra,* 60 Cal.4th 659, the California Supreme Court reversed the defendant's convictions after finding (1) the prosecutor misstated the burden of proof in rebuttal argument and (2) held defense counsel was prejudicially ineffective for failing to object. The defendant was convicted of two counts of committing lewd acts against a then-seven-year-old child; the child, who was nearly 10 years old at trial, gave inconsistent testimony and refused to answer many questions at trial. (*Id.* at pp. 662-663.) On appeal, the defendant argued the prosecutor committed prejudicial misconduct by misstating the burden of proof in closing rebuttal argument. The defendant, conceding his attorney had failed to object, raised ineffective assistance as an alternative argument. (*Id.* at p. 674.)

The California Supreme Court in *Centeno* reviewed the prosecutor's rebuttal argument and determined the prosecutor misstated the burden of proof in two separate instances. In the first instance, the prosecutor used a visual display depicting the outline of the State of California and gave hypothetical testimony from hypothetical witnesses who described various cities and landmarks. (*Centeno, supra,* 60 Cal.4th at p. 665.) The prosecutor argued that even though the information provided was incomplete, there was no reasonable doubt the evidence described the State of California. (*Id.* at pp. 665-666.) The Supreme Court held the use of the visual image misstated the burden of proof, misled the jury into believing its task was analogous to solving a picture puzzle unrelated to the evidence, and failed to accurately portray the state of the evidence presented at trial. (*Id.* at pp. 669-670.)

The second instance in which the prosecutor misstated the burden of proof is relevant here. The prosecutor in *Centeno* had argued: "'Is it reasonable to believe that

10

a shy, scared child who can't even name the body parts made up an embarrassing, humiliating sexual abuse, came and testified to this in a room full of strangers *or the defendant abused Jane Doe. That is what is reasonable, that he abused her.* [¶] Is it reasonable to believe that Jane Doe is lying to set-up the defendant for no reason or is the defendant guilty?' . . . 'Is it reasonable to believe that there is an innocent explanation for a grown man laying on a seven year old? No, that is not reasonable. Is it reasonable to believe that there is an innocent explanation for the defendant taking his penis out of his pants when he's on top of a seven-year-old child? No, that is not reasonable. Is it reasonable to believe that the defendant is being set-up in what is really a very unsophisticated conspiracy led by an officer who has never met the defendant *or he['s] good for it? That is what is reasonable. He's good for it.*'" (*Centeno, supra,* 60 Cal.4th at pp. 671-672.)

The Supreme Court concluded the italicized parts of the prosecutor's argument misstated the burden of proof because they "left the jury with the impression that so long as [the prosecutor's] interpretation of the evidence was reasonable, the People had met their burden." (*Centeno, supra,* 60 Cal.4th at p. 672.) The prosecutor did not simply urge the jury to accept the reasonable and reject the unreasonable in evaluating the evidence. "Rather, [the prosecutor] confounded the concept of rejecting unreasonable inferences with the standard of proof beyond a reasonable doubt. She repeatedly suggested that the jury could find defendant guilty based on a 'reasonable' account of the evidence. These remarks clearly diluted the People's burden." (*Id.* at p. 673, italics omitted.)

The prosecutor's statement at the beginning of the rebuttal argument in this case bears some resemblance to those found in *Centeno* to be error. Here, immediately following her statements on the reasonable doubt standard, the prosecutor argued: "You must reject any unreasonable interpretation. And if there's one reasonable interpretation, you must convict." That statement is somewhat similar to telling the jury "'the defendant

11

abused Jane Doe. That is what is reasonable, that he abused her'" and "'[t]hat is what is reasonable. He's good for it.'" (*Centeno, supra,* 60 Cal.4th at pp. 671, 672, italics omitted.)

In the respondent's brief, the Attorney General argues: "The prosecutor never suggested that the People could meet their burden by merely presenting a reasonable account of the evidence. If anything, she argued that the People's account of the evidence was the only reasonable interpretation. This argument was made in response to [Meneses]'s argument that there were multiple reasonable interpretations of the circumstantial evidence—both for purposes of evaluating the victims' credibility and for purposes of evaluating [Meneses]'s intent and mental state. The prosecutor urged the jury to reject those interpretations as unreasonable and find [Meneses] guilty. There was nothing improper about that."

While the prosecutor's statement may have misstated the law if viewed in isolation, we conclude there was no prosecutorial error because in the context of the entire argument and jury instructions it was not reasonably likely the jury understood or applied the statement in an improper or erroneous manner.

To find prosecutorial error, we must view the challenged statement in the context of the entire argument and the jury instructions to determine whether there was a reasonable likelihood the jury understood or applied the comments in an improper or erroneous manner. (*People v. Cortez* (2016) 63 Cal.4th 101, 130-131 (*Cortez*).) "If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.'" (*Id.* at p. 130.) "'[W]e "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 894.)

In that respect, this case differs from *Centeno*. In *Centeno*, the California Supreme Court concluded it was reasonably likely that the prosecutor's hypothetical

12

about the State of California together with the "accompanying argument" misled the jury. (*Centeno, supra,* 60 Cal.4th at p. 674.) Here, the prosecutor did not present an objectionable hypothetical and, as we have explained, the potential prosecutorial error is limited to a single statement made at the beginning of the prosecutor's rebuttal argument.

The vast majority of the prosecutor's argument was focused on evaluating the witnesses' testimony and credibility. In closing argument, defense counsel argued about the reasonable inferences that could be drawn from the trial evidence, noting that when "[y]ou can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence, the other to guilt, you must accept the one that points to innocence." Given that both the prosecutor's and defense counsel's closing arguments were so heavily focused on the reasonable interpretation of evidence, the jurors would have understood the prosecutor's challenged statement as directed to the issue of reasonable and unreasonable inferences and not to the reasonable doubt burden of proof which was not the focus of either counsel's argument.

In determining whether the prosecutor committed error, it is significant that the trial court correctly defined the reasonable doubt standard in the jury instructions. (*Cortez, supra,* 63 Cal.4th at p. 131.) Here, the trial court instructed the jury with CALCRIM No. 220: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant

13

guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." As discussed *ante*, the jury was instructed with CALCRIM No. 1191B which reiterated, "[t]he People must still prove each charge beyond a reasonable doubt."

The court instructed the jury on direct and circumstantial evidence with CALCRIM No. 224, stating in part, "[b]efore you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt," and further stating that if the jurors could draw two or more reasonable conclusions from the circumstantial evidence, they had to accept the one pointing to innocence. The jury was also instructed with CALCRIM No. 225 reiterating: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt." The court told the jurors that in evaluating a witness's testimony, they could consider the reasonableness of the testimony in light of all the other evidence in the case, and that as to any opinion given by a witness at trial, they could "disregard all or any part of an opinion that [they] find unbelievable, unreasonable, or unsupported by the evidence." (See CALCRIM Nos. 226, 333.)

The jury instructions left no doubt about the prosecution's burden of proof, the proper application of each juror's common sense and experience, and the role of reasonableness in reaching a verdict. To the extent the prosecutor's statement at the beginning of the rebuttal argument was inconsistent with the instructions, the jury was instructed to follow the latter. The trial court instructed the jury with CALCRIM No. 200, stating in part: "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

14

We presume the jury followed the court's instructions, rather than any conflicting comment by counsel, in reaching a verdict. (*Cortez, supra,* 63 Cal.4th at p. 131; *People v. Prince* (2007) 40 Cal.4th 1179, 1295; *People v. Morales* (2001) 25 Cal.4th 34, 47.) "'[J]uries generally understand that counsel's assertions are the "statements of advocates."'" (*Cortez, supra,* 63 Cal.4th at p. 131.)

Considered "'[i]n the context of the whole argument and the [jury] instructions'" (*Centeno, supra,* 60 Cal.4th at p. 667), the jury in this case was not reasonably likely to understand the prosecutor's comments as diminishing the prosecution's burden of proof. We therefore conclude there was no prosecutorial error.

Because we conclude there was no prosecutorial error, Meneses's argument his trial counsel was ineffective for failure to object to the prosecutor's statements challenged on appeal is without merit.

## DISPOSITION

The judgment is affirmed.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

15

Filed 10/11/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>CESAR MENESES,<br><br>   Defendant and Appellant. | G055942<br><br>(Super. Ct. No. 15CF1683)<br><br>O R D E R |

As it appears that our opinion filed on October 10, 2019 meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (6), and (7), on our own motion, we order the opinion published in the Official Reports.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.