Filed 7/9/25  P. v. Franco-Alvarez CA5
Opinion after recalling remittitur

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VICTOR MANUEL FRANCO-ALVAREZ,<br><br>Defendant and Appellant. | F082345<br><br>(Super. Ct. No. F19907870)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Derek K. Kowata, under appointment by the Court of Appeal, Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Kari Mueller, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# **INTRODUCTION**

Appellant Victor Manuel Franco-Alvarez (Alvarez) was convicted by jury of committing a lewd act upon a child under the age of 14 (Pen. Code,[1] § 288, subd. (a), count 1), sexual penetration by force or duress on a child under the age of 14 (§ 289, subd. (a)(1)(B), count 3), and sexual penetration by force or duress (§ 289, subd. (a)(1)(A), count 4). He was sentenced to an aggregate term of 16 years in state prison.

Alvarez raises the following issues on appeal: (1) his conviction on count 4 for sexual penetration by force or duress (§ 289, subd. (a)(1)(A)) must be reversed because it is a lesser included offense of the underlying conduct supporting his conviction on count 3; (2) he is entitled to resentencing following the enactment of Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill No. 518), which amends section 654 to remove the requirement that the trial court impose the longest potential term of imprisonment (Stats. 2021, ch. 441, § 1); (3) there is insufficient evidence of duress to support his conviction on counts 3 and 4; (4) the trial court erred in failing to instruct the jury, sua sponte, on sexual penetration of a child under section 289, subdivision (j), as a lesser included offense of his conviction on count 3 for sexual penetration of a child under the age of 14 (§ 289, subd. (a)(1)(B)); (5) the trial court erred by instructing the jury on CALCRIM No. 1191B, which pertains to Alvarez's propensity to commit sexual offenses; (6) the trial court erred by imposing a full consecutive term on count 3 because the sentencing scheme set forth under section 667.6 does not apply under the circumstances; (7) there is insufficient evidence to support the trial court's order for blood testing for antibodies to the acquired immunodeficiency virus (AIDS); (8) the trial court's post-judgment no-contact order imposed under section 1202.05 must be stricken.

The Attorney General concedes that Alvarez's first, seventh, and eight claims have merit and that resentencing is required as a result. In light of the fact that resentencing is

---

[1]     All undefined statutory citations are to the Penal Code unless otherwise indicated.

required, the Attorney General submits that Alvarez's claim that he is entitled to resentencing under Assembly Bill No. 518 is moot. We accept the Attorney General's concessions. As to all other claims raised by Alvarez, the Attorney General contends they are meritless, and as a result, the judgment of conviction should be affirmed. We agree.

For the reasons discussed herein, we will order the trial court's post-judgment no-contact order stricken (§ 1202.05). We will also vacate Alvarez's sentence. On remand, Alvarez shall receive a full resentencing on all counts. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425.) On remand, the prosecutor may elect to proffer additional evidence supporting an AIDS testing order (§ 1202.1). However, absent evidence that would support a finding of probable cause (see *id*., subd. (5)(A)), the AIDS testing must be stricken. In all other respects, the judgment is affirmed.

## PROCEDURAL HISTORY

On October 5, 2020, the Fresno County District Attorney filed a first amended information charging Alvarez with committing a lewd act upon a child under the age of 14 (§ 288, subd. (a), count 1); a lewd act upon a child, who was 14 or 15 years old by a person at least 10 years older (§ 288, subd. (c)(1), count 2); sexual penetration by force or duress on a child under the age of 14 (§ 289, subd. (a)(1)(B), count 3); sexual penetration by force or duress (§ 289, subd. (a)(1)(A), count 4); oral copulation of a person under 16 years of age by a person over the age of 21 years (§ 287, subd. (b)(2), count 5); forcible rape (§ 261, subd. (a)(2), count 6); and corporal injury to child (§ 273d, subd. (a), count 7).

On November 17, 2020, a jury found Alvarez guilty on counts 1, 3, and 4. The jury found him not guilty on counts 2 and 6 and deadlocked on counts 5 and 7. The trial court declared a mistrial on counts 5 and 7, and then dismissed both counts following a motion by the prosecutor.

On January 27, 2021, the trial court sentenced Alvarez to a determinate term of 16 years in state prison.

Alvarez filed a timely notice of appeal.

## STATEMENT OF FACTS

**The Prosecution's Case**

Between the ages of 12 or 13 and 14 years old, M.F. was sexually abused by Alvarez, her father, on multiple occasions. At trial, she testified to the incidents as she recalled them. She was unable to recall the details of some of the incidents that had occurred. And, with respect to the incidents she was able to describe, she could not recall specific dates or the precise chronological order in which the incidents had occurred.

M.F. did not immediately disclose the sexual abuse to anyone. Throughout her testimony, she described her father as being physically and verbally abusive. M.F. testified that she was afraid of her father because he would often raise his voice and he had hit M.F. and her brothers.

In 2018, after her parents separated and M.F. had moved out of the house with her mother and two of her brothers, she disclosed the sexual abuse to her mother. After the incident was reported to the police, M.F. placed a tape-recorded pretextual phone call to Alvarez. Although Alvarez never expressly apologized for the sexual abuse, he told her that he went to get counseling for "[e]verything I've done."

### M.F.'s Testimony

#### *The First Incident*

M.F. was 12 or 13 years old, when she was in seventh grade. At that time, she shared a room with two of her brothers, L.F. and J.F. M.F. slept on her own bed, while L.F. and J.F. slept on a bunk bed. L.F. slept on the bottom bunk and J.F. slept on the top bunk.

One morning, at around 2:00 or 3:00 a.m., M.F. was asleep when she felt someone touching her. She opened her eyes and recognized the figure in her room as her father,

4.

Alvarez. M.F. felt Alvarez's hand caress her breasts over her clothing. Using two fingers, Alvarez began touching and rubbing M.F.'s vagina under her clothing. He touched her "clitoris area" located "inside the lips" with two fingers moving in a circular motion. As he was touching her, Alvarez kissed M.F. on her lips. M.F. laid still and acted like she was asleep. L.F. and J.F. were both asleep.

At some point, Alvarez stopped and left the room. M.F. did not tell anyone what had occurred because she was afraid of her father. According to M.F., Alvarez would raise his voice frequently and he would hit her and her brothers.

### The Second Incident

On another occasion, Alvarez came into M.F.'s room at some point past midnight and began touching her. L.F. and J.F. were asleep.

Alvarez kissed M.F. on her mouth and put his hands on or inside her pants. He felt M.F.'s maxi pad. Alvarez said something in Spanish about M.F.'s period and left the room. M.F. felt scared and disgusted. She told a friend that she was scared to go to sleep at night because she did not want her father to come into her room. M.F.'s friend told her that she did not "want to know that." M.F. felt disgusted with herself. She did not tell anyone else about the incident until 2018.

### The Third Incident

One Saturday night, M.F.'s family had guests visiting from out of town. M.F.'s mother and father were sleeping in M.F.'s room, while their guests slept in her parents' room. At some point past midnight, when everyone was asleep, Alvarez began kissing M.F. on her lips, waking her up. M.F. testified that he smelled like beer.

Alvarez tried to pick M.F. up by putting his hands under her body in a cradle hold. Alvarez whispered something to her in Spanish, to the effect wanting to take her to the restroom. M.F. tried to "make [her] body as heavy as [she could]." Alvarez was unable to lift her. After a while, he gave up and went back to sleep. M.F. felt "gross."

### The Fourth Incident

One summer day, M.F. was in her parents' bedroom. She was sitting on a chair with wheels. M.F.'s mother was massaging M.F.'s shoulders and neck because M.F. had a headache. When her mother left the room to cook dinner, Alvarez began massaging M.F. He kissed M.F.'s neck and shoulders and he started to touch her breasts on the outside of her shirt.

Alvarez turned M.F.'s chair, lifted her shirt and her bra, and began sucking on her breasts and nipples. M.F. tried to slide her chair away from him, but Alvarez would pull her chair back closer to him. At some point, M.F. got up and left the room.

### The Fifth Incident

On another occasion, during the summer, M.F. was in her parents' bedroom, lying down with her parents. Her stomach was hurting and she was trying to go to sleep.

Alvarez was laying down in between M.F. and M.F.'s mother. All three were underneath a blanket. M.F. felt Alvarez's hands on her vaginal area, over her jeans. He stopped touching her when M.F.'s mother got up and discussed taking a shower.

Alvarez told M.F.'s mother that she should shower first, and he would shower after her. When M.F.'s mother entered the shower in a bathroom unattached to the bedroom, Alvarez went back to the bed and laid down next to M.F. He unbuckled her belt and pulled her jeans and underwear down to her ankles.

M.F. was on her side and Alvarez was behind her. M.F. felt something hard in between her butt cheeks, which she said felt like his penis. Alvarez began moving back and forth. His stomach was touching M.F.'s lower back. Alvarez continued to do this the entire time M.F.'s mother was in the shower, stopping only when the shower turned off. M.F. pulled her jeans and underwear up, buckled her jeans, and left the room.

### The Sixth Incident

The sixth incident M.F. recalled occurred in her bedroom, at nighttime when everyone was asleep. M.F. testified that she had been asleep. She awoke to Alvarez

removing her pajama bottoms and underwear. He tried to insert his penis into M.F.'s vagina. M.F. explained that Alvarez had raised one of her legs up, putting it on top of his shoulder. She felt something hard, round, and erect inside of her vagina, which "hurt[] really bad." In pain, she turned her body, which removed her leg from Alvarez's shoulder, causing Alvarez to stop.

### The Seventh Incident

The seventh occurred in M.F.'s bedroom at nighttime. Alvarez stood with his waist in front of her and then she felt what she suspected was his penis on her lips. M.F. testified that Alvarez was attempting to insert his penis into her mouth. She kept her lips shut to prevent him from doing so.

### The Eighth Incident

M.F. recalled another incident when she was in her room, and Alvarez touched her underneath her underwear while whispering, "[y]ou're very beautiful" to her.

### L.F.'s Testimony

When he was between the ages of nine and 12 years old, L.F. would awaken between 2:00 a.m. and 4:00 a.m. to see Alvarez in the childrens' shared bedroom. L.F. observed Alvarez in the bed and underneath the blankets with M.F. on many occasions. L.F. would pretend to be asleep during these incidents because he felt uncomfortable.

L.F. stated that Alvarez was touching M.F. inappropriately. Although he could not see much because they were under the covers, he stated that M.F. was making sounds "like … when people basically have sex." L.F. added that on many occasions during the daytime, he observed Alvarez touch M.F.'s breasts. L.F. recalled that on many occasions, Alvarez would also joke that he was going to touch M.F.'s breasts.

On one occasion, Alvarez locked himself and M.F. inside the bathroom. M.F. told L.F. that Alvarez was grabbing and pinching her and that he would not let her leave.

L.F. explained that he never confronted his father because he was afraid of him. L.F. stated that Alvarez "would always just beat us up."

7.

**J.F.'s Testimony**

J.F. testified that he never saw Alvarez touch M.F. inappropriately.

**The Defense's Case**

Alvarez denied the accusations against him.

## DISCUSSION

**I.     Alvarez's Conviction on Count 4 Must be Reversed**

Alvarez contends that his conviction on count 4 for forcible sexual penetration (§ 289, subd. (a)(1)(A)) must be reversed because it is a lesser included offense of his conviction on count 3 for forcible sexual penetration of a child under 14 (§ 289, subd. (a)(1)(B)).  The Attorney General agrees, as do we.

### A.     Background

The prosecutor charged count 3 and 4 in the alternative based on a single incident where Alvarez digitally penetrated M.F.'s vagina.  At trial, M.F. could not recall the specific dates of any of the incidents of sexual abuse that she described, so it was unclear how old she was when some of the incidents described had occurred.

During closing argument, the prosecutor told the jury that counts 3 and 4 were based upon "the … very same conduct," the only distinction being that count 3 applied to children under the age of 14; whereas, count 4 had no age restriction.  The underlying forcible act of penetration supporting both counts was Alvarez's act of inserting his fingers into M.F.'s external genital organs, including, her clitoris and labia.  Based upon M.F.'s testimony that the incident occurred when she was in the seventh grade, when she was likely 12 years old.

The jury returned a verdict of guilty on both counts.  At sentencing, the trial court recognized that count 4 stemmed from the same act as count 3 and stayed sentencing on count 4 pursuant to section 654. [2]  According to the court, M.F. had only testified about

---

[2]     The court did not select a term to impose on count 4.  The abstract of judgment shows that count 4 was stayed pursuant to section 654, but no term was selected.  (*People*

one act of sexual penetration which would support a conviction under section 289, and there was substantial evidence to support a finding that M.F. was under the age of 14 when the act occurred.  As such, the court selected count 3 as the principal term, and stayed count 4.

## B.	Relevant Legal Principles

A defendant "cannot be convicted of both an offense and a lesser offense necessarily included within that offense, based upon his or her commission of the identical act." (*People v. Sanchez* (2001) 24 Cal.4th 983, 987; *People v. Pearson* (1986) 42 Cal.3d 351, 355 ["[M]ultiple convictions may *not* be based on necessarily included offenses"].)

"To determine if an offense is lesser and necessarily included in another offense for this purpose, we apply either the elements test or the accusatory pleading test.  'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 404.)

## C.	Analysis

In count 3, Alvarez was convicted of violating section 289, subdivision (a)(1)(B), which provides the following:  "Any person who commits an act of sexual penetration upon a child who is under 14 years of age, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and

---

*v. Duff* (2010) 50 Cal.4th 787, 795-796 "when a court determines that a conviction falls within the meaning of section 654, it is necessary *to impose* sentence [and] to stay the *execution* of the duplicative sentence"].)  The error, while not necessarily a basis for reversal (see *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473) is ultimately irrelevant in light of our conclusion that Alvarez's conviction on count 4 must be reversed.

unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 8, 10, or 12 years."

In count 4, Alvarez was convicted of violating section 289, subdivision (a)(1)(A), which provides the following: "Any person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

Counts 3 and 4 contain identical elements with one exception: count 3 contains the additional element of the victim being under the age of 14 years old. By definition, a defendant cannot commit count 3 without also violating count 4. Count 4 is therefore a lesser included offense of count 3. (*People v. Lopez* (1998) 19 Cal.4th 282, 288 ["[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former"].)

"When a defendant is convicted of a greater and a lesser included offense, reversal of the conviction for the lesser included offense is required." (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1416.) Because count 4 is a lesser included offense of count 3, the trial court erred by staying count 4 under section 654, rather than reversing it. We will therefore reverse Alvarez's conviction on count 4 and remand the matter back to the lower court for resentencing.

## II.    The Application of Assembly Bill No. 518

Alvarez contends that resentencing is required in light of newly enacted legislation that retroactively applies to his nonfinal judgment of conviction. During the pendency of this appeal, Governor Newsom signed Assembly Bill No. 518 into law. Assembly Bill No. 518 changes existing law regarding the trial court's discretion to stay a sentence under section 654 (Stats. 2022, ch. 441, § 1). Here, although the trial court stayed

execution of Alvarez's sentence on count 4 pursuant to section 654, it failed to select a term to stay the execution thereof.

Although Assembly Bill No. 518 is retroactive to nonfinal judgments of conviction (see *People v. Sek* (2022) 74 Cal.App.5th 657, 673) the Attorney General contends that we need not reach the merits of Alvarez's claim because it is moot. We agree.

In Part I, *ante*, we concluded that Alvarez's sentence on count 4 must be reversed. Our Supreme Court has held "that when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) This principle is called "the 'full sentencing rule.' " (*Ibid*.) Because Alvarez is entitled to a full resentencing on all counts, the trial court will have the opportunity to consider the application of Assembly Bill No. 518 to Alvarez's sentence in the first instance below. We therefore do not reach the merits of Alvarez's claim as it is moot.

### III. Substantial Evidence Supports Alvarez's Convictions for Forcible Sexual Penetration on Count 3 & 4

Alvarez asserts that there is insufficient evidence of duress to support his conviction for forcible sexual penetration, which pertains to counts 3 and 4. We are not persuaded. Following our independent review of the record, we conclude there is substantial evidence of duress.

#### A. Relevant Legal Principles

In reviewing a conviction for substantial evidence, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104; *People v. Salazar* (2016) 63 Cal.4th

11.

214, 242.) We must view the evidence in the light most favorable to the judgment below, indulging in all presumptions and every logical inference the trier of fact could draw from the evidence. (*People v. Carter* (2005) 36 Cal.4th 1114, 1156; *People v. Maury* (2003) 30 Cal.4th 342, 396.)

The test is whether substantial evidence supports the jury's conclusion (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578), not whether the reviewing court would reach the same conclusion. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.) Thus, reversal is not warranted "unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) " 'The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable.' " (*People v. Panah* (2005) 35 Cal.4th 395, 489; *People v. Scott* (1978) 21 Cal.3d 284, 296.)

If the verdict is supported by substantial evidence, the appellate court must accord due deference to the trier of fact and not substitute their evaluations of a witness's credibility for that of the fact finder. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078; *People v. Smith* (2005) 37 Cal.4th 733, 739 [" ' "it is the exclusive province of the ... jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends" ' "].) Because an appellate court must "give due deference to the trier of fact and not retry the case ourselves," an appellant challenging the sufficiency of the evidence "bears an enormous burden." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

## B.    Analysis

Alvarez was convicted of forcible sexual penetration on counts 3 and 4. "The gravamen of the crime … is a sexual penetration accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (*People v. Griffin* (2004) 33 Cal.4th 1015, 1027, italics omitted.) Here, the prosecutor told the jury that Alvarez had accomplished counts 3 and 4 by duress.

The court instructed the jury that to find Alvarez guilty by duress on counts 3 and 4, it had to find beyond a reasonable doubt, "a direct or implied threat of force, violence, danger, or retribution that would cause a reasonable person to do or submit to something that she would not do or submit to otherwise. When deciding whether the act was accomplished by duress, consider all the circumstances, including the woman's age and her relationship to the defendant." (CALCRIM Nos. 1015, 1045.)

"The totality of the circumstances includes the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child. [Citations.] The fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress. [Citation] When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072-1073.)

Here, the acts supporting counts 3 and 4 were based on M.F.'s testimony that Alvarez came into her room in the middle of the night, kissed her on the mouth, and fondled her genitalia. At the time of the incident, M.F. was 12 or 13 years old. M.F. testified that she was too scared to say anything or to call for help because she was afraid that her father would hurt her. She explained that Alvarez was a very angry person. M.F. and L.F. both testified that Alvarez would often hit them and yell at them. This caused M.F. to become fearful of her father.

M.F.'s testimony amply supports the conclusion that counts 3 and 4 were committed by duress. M.F. was only 12 or 13 years old at the time of the incident, which occurred inside of the family home, and the act was perpetrated by her father, whom she feared. Based upon these facts, the jury could reasonably conclude that Alvarez's prior acts of violence against the children constituted an implied threat of violence if M.F. resisted her father's sexual advances.

13.

**IV.    The Trial Court Did Not Err by Failing to Instruct on Section 289, Subdivision (j)**

Alvarez asserts that the trial court had a sua sponte duty to instruct on the offense stated in section 289, subdivision (j).  According to Alvarez, section 289, subdivision (j) is a lesser included offense of section 289, subdivision (a)(1)(B), for which he was convicted on count 3.  Because it is theoretically possible to violate section 289, subdivision (a)(1)(B) (the alleged greater offense) without also violating section 289, subdivision (j) (the alleged lesser included offense), the latter crime is not a lesser included offense of the former.  We therefore reject Alvarez's assertion that the trial court erred by failing to instruct the jury on section 289, subdivision (j) sua sponte.

**A.    Relevant Legal Principles**

" 'A trial court has a sua sponte duty to "instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser." [Citation.]  Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense.  "The rule's purpose is ... to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence." [Citation.]  In light of this purpose, the court need instruct the jury on a lesser included offense only "[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of" the lesser offense.' " (*People v. Landry* (2016) 2 Cal.5th 52, 96, italics omitted.)

**B.    Analysis**

Section 289, subdivision (j) provides:  "Any person who participates in an act of sexual penetration with another person *who is under 14 years of age and who is more than 10 years younger than he or she* shall be punished by imprisonment in the state prison for three, six, or eight years."  (Italics added.)

14.

In contrast, section 289, subdivision (a)(1)(B) provides: "Any person who commits an act of sexual penetration upon a child who is under 14 years of age, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 8, 10, or 12 years."

It is possible to violate section 289, subdivision (a)(1)(B) without also violating section 289, subdivision (j). The example provided by the Attorney General is apropos: "a 21-year-old person who commits an act of sexual penetration upon a 13-year-old child by means of force or duress would violate section 289, subdivision (a)(1)(B), but not section 289, subdivision (j)." This is because section 289, subdivision (j) has the added requirement that the victim must be "more than 10 years younger" than the offender. We therefore reject Alvarez's assertion that the trial court erred by failing to instruct the jury on section 289, subdivision (j), sua sponte.

## V. The Trial Court Did Not Reversibly Err by Instructing the Jury on CALCRIM No. 1191B

Alvarez contends that the trial court erred by instructing the jury with a modified version of CALCRIM No. 1191B, which instructed the jury as follows:

> "The People presented evidence that the defendant committed the crimes of Lewd Acts Upon a Child Under 14 and between 14-15 years old charged in Counts 1 through 6.

> "If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the other sex offenses charged in this case.

According to Alvarez, the trial court's instruction on CALCRIM No. 1191B allowed the jury to improperly infer from the evidence supporting one charged offense that he had the propensity to commit the other charged offenses. Alvarez acknowledges that trial counsel did not object to the instruction below, but he contends the alleged error

15.

potentially affects his substantial rights (§ 1259). We will therefore reach the merits of his claim regardless of forfeiture. The question is whether the alleged error resulted in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*People v. Arredondo* (1975) 52 Cal.App.3d 973, 978.)

Alvarez acknowledges that his argument was rejected by our Supreme Court in *People v. Villatoro* (2012) 54 Cal.4th 1152, 1159 (*Villatoro*). He raises this issue only to preserve it for further review.

We agree that *Villatoro,* which we are bound to follow, generally forecloses his claim. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 197 [" 'Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court.' "]; *People v. Meneses* (2019) 41 Cal.App.5th 63, 67-68 [finding CALCRIM No. 1191B proper under *Villatoro*].)

In *Villatoro*, the defendant was charged with the commission of multiple sex crimes against five women. (*Villatoro*, *supra*, 54 Cal.4th at p. 1156.) The trial court instructed the jury it could conclude that Villatoro was inclined to commit the charged sex crimes if it decided he had committed other charged sexual offenses. (*Id.* at pp. 1166-1167.) The instruction given, a modified version of CALCRIM No. 1191, "permitted the jury to use evidence of [Villatoro's] guilt of one of the charged sexual offenses as evidence of his propensity to commit the other charged sexual offenses." (*Villatoro*, at p. 1158.) Our Supreme Court rejected Villatoro's challenge to the instruction. (*Id*. at p. 1169.)

The majority opinion acknowledged the "general concern against allowing a jury to consider propensity evidence in a criminal case" nevertheless, the court concluded, "the Legislature has made the careful determination that evidence the defendant committed one or more sex offenses may be properly considered." (*Villatoro*, *supra*, 54 Cal.4th at p. 1165.) The majority opinion further observed that the challenged instruction

told the jury that the defendant's prior commission of a sex offense " 'is not sufficient by itself to prove the defendant is guilty' " of a pending charged offense. (*Id*. at p. 1165.)

Although not addressed by the parties, the instruction given here was similar but not identical to the instruction in *Villatoro*. Unlike the instruction in *Villatoro* (see *supra,* 54 Cal.4th at p. 1167), the instruction here omitted the following language:

> "If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove (the/each) (charge/ [and] allegation) beyond a reasonable doubt." (CALCRIM No. 1191B.)

Thus, the jury here was not told that Alvarez's commission of a sex offense on a prior occasion was " 'not sufficient by itself to prove [he was] guilty.' " (*Villatoro*, *supra*, 54 Cal.4th at p. 1165.) While the omission of the forgoing language lends support to Alvarez's assertion that the instruction, as given, was problematic, we are not persuaded that Alvarez was prejudiced. That is, Alvarez has not shown that it is reasonably probable that he would have obtained a more favorable result had the challenged instruction not been given. (*People v. Watson, supra,* 46 Cal.2d at p. 837.)

Here, as in *Villatoro*, the jury was instructed with CALCRIM No. 220, which defines reasonable doubt and the presumption of innocence. (*Villatoro*, *supra*, 54 Cal.4th at pp. 1167-1168.) This was the only burden of proof identified in the jury instructions. Thus, there is no risk that the jury convicted Alvarez by applying a lower standard of proof. (See, e.g., *People v. Cruz* (2016) 2 Cal.App.5th 1178.)

Further, the jury's verdict supports the conclusion that the verdicts were not bootstrapped together based upon propensity evidence (see, *Villatoro*, *supra*, 54 Cal.4th at pp. 1169-1182 (conc. & dis. opn. of Corrigan, J.). Following deliberations, the jury deadlocked on counts 5 and 6, which charged Alvarez with oral copulation (§ 287, subd. (b)(2)) and rape (§ 261, subd. (b)(2)), respectively. Based on the jury's verdicts, the jury understood the evidence supporting each offense must support a finding of guilt beyond a

reasonable doubt, and that propensity evidence alone would not be sufficient to support such a finding. Consequently, we find that any error from the instruction given here was harmless.

## VI. The Trial Court Erred by Imposing a Full Consecutive Term on Count 3

The trial court sentenced Alvarez to the middle term of six years on count 1, and a consecutive term of 10 years on count 3, which represented the full middle term of the applicable sentencing triad. The court stated that it was imposing a consecutive full term on count 3 based upon its discretion under section 667.6, subdivision (c).

Alvarez contends that the trial court erred by imposing a consecutive term on count 3. According to Alvarez, a full consecutive term cannot be discretionarily imposed on count 3 because counts 1 and 3 did not involve the same victim *on the same occasion* (see, § 667.6, subd. (c)). Further, because Alvarez was only convicted of one crime under subdivision (e) of section 667.6 (see, *id*. subd. (d)), he was not subject to the full mandatory consecutive term provision set forth in subdivisions (c) and (d). The Attorney General agrees.

We agree that the trial court erred by imposing a consecutive full-term sentence of 10 years on count 3. Although this issue is technically rendered moot in light of our conclusion in Part I, *ante*, finding that resentencing is required, we address Alvarez's claim to avoid the possibility that the error will occur again at the resentencing hearing.

### A. Background

The jury found Alvarez guilty on count 1 (§ 288, subd. (a)), count 3 (§ 289, subd. (a)(1)(B)), and count 4 (§ 289, subd. (a)(1)(A)). Alvarez was sentenced to an aggregate determinate term of 16 years in state prison, consisting of the middle term of six years on count 1 (§ 288, subd. (a)), plus a full consecutive middle term of 10 years on count 3 (§ 289, subd. (a)(1)(B)).

18.

The court stated it was selecting the six-year term on count 1 as the principal term and imposing a full consecutive term on count 3 "pursuant to [section] 667.6." Count 4 was stayed pursuant to section 654, although a term was not selected on this count.

## B.    Relevant Legal Principles

Section 667.6 is a more severe consecutive sentencing alternative to the section 1170.1 scheme set forth for multiple felony convictions. (*People v. Jones* (1988) 46 Cal.3d 585, 592.) Section 667.6, subdivision (c), relates to discretionary consecutive sentencing of convictions for certain enumerated sex offenses, whereas subdivision (d) relates to mandatory consecutive sentencing for such crimes. These sections provide the following, in relevant part:

> "(c) In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e). If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison.

> "(d)(1) A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions.

> "[¶…¶]

> "(2) The term shall be served consecutively to any other term of imprisonment and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison." (§ 667.6, subds. (c)(1),(2), (d).)

Subdivision (c) of section 667.6 vests the trial court with discretion to impose a full consecutive term for each conviction of an offense set forth in subdivision (e) of section 667.61 "if the crimes involve the same victim *on the **same** occasion*." (§ 667.6, subd. (c), emphasis added.)

By contrast, under subdivision (d)(1) of section 667.6, a full consecutive term *must* be imposed for each conviction of an offense enumerated under subdivision (e) of section 667.61, "if the crimes involve separate victims or involve the same victim on separate occasions." (§ 667.61, subd. (d)(1).) Section 667.6, subdivision (d)(1), "applies only when a defendant stands convicted of more than one offense specified in subdivision (e)." (*People v. Goodliffe* (2009) 177 Cal.App.4th 723, 727, fn. 10; *People v. Jones, supra,* 46 Cal.3d at p. 594, fn. 5.)

## C.    Analysis

Here, the trial court did not have discretion to impose a full consecutive term on count 3 (§ 667.6, subd. (c)) because the underlying conduct supporting counts 1 and 3 occurred on separate occasions. Count 3 was based upon Alvarez's act of kissing M.F. and fondling her genitalia. Count 4 could be based upon several other acts occurring on separate occasions, including: Alvarez's act of touching M.F.'s vagina over her clothes, when Alvarez kissed and sucked on M.F.'s breasts and nipples, or when he inserted his penis in between her butt cheeks. The discretionary full consecutive term in subdivision (c) only applies where the defendant "is convicted of at least one offense specified in subdivision (e)," and the defendant's "crimes involve the same victim *on the same occasion*." (Italics added.)

Further, Alvarez was convicted of only one offense specified in subdivision (e) of section 667.6: forcible sexual penetration. (See, § 667.6, subd. (e)(5).) His conviction on count 1 for committing a lewd or lascivious act with a child under the age of 14 (§ 288, subd. (c)(1)) is not an offense specified in subdivision (e) of section 667.6. Alvarez was therefore not subject to the mandatory full consecutive term provision in

20.

subdivision (d) of section 667.61. (*People v. Goodliffe, supra,* 177 Cal.App.4th at p. 727, fn. 10 ["[the] mandatory sentencing scheme applies only when a defendant stands convicted of more than one offense specified in subdivision (e)"].) We therefore agree with the parties' assertion that the trial court erred by imposing a consecutive full term on count 3. Because this matter must already be remanded back to the lower court for a full resentencing, we simply observe this error to avoid its repetition.

## VII. The Trial Court's Order Requiring Testing for AIDS Antibodies

Alvarez contends that remand is required so that the lower court can determine whether there is probable cause to require Alvarez to submit to an AIDS antibody test. We agree that there is insufficient evidence to support the trial court's order, and will therefore remand the matter back to the lower court for a probable cause hearing, at the election of the prosecutor.

### A. Background

The jury convicted Alvarez of violating section 289, subdivision (a)(1)(A), and section 289, subdivision (a)(1)(B). At sentencing, the trial court ordered Alvarez to submit to a blood test for AIDS blood testing under section 1202.1. Trial counsel did not object to the trial court's order, nor was there an explicit finding of probable cause by the trial court preceding the order.

### B. Section 1202.1

Generally, a person may not be compelled to submit to a test for the presence of AIDS antibodies. (See Health & Saf. Code, § 120975.) However, a defendant convicted of a specified sexual offense must "submit to a blood or oral mucosal transudate saliva test for evidence of antibodies to the probable causative agent of acquired immunodeficiency syndrome (AIDS) within 180 days of the date of conviction." (§ 1202.1, subd. (a).)

Section 1202.1 mandates testing for specific sex offenses which are not relevant here. AIDS testing may also be ordered "if the court finds that there is probable cause to

21.

believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim," and where the defendant has committed one of the following offenses:

"(i) Sexual penetration in violation of Section 264.1, 266c, or 289.

"(ii) Aggravated sexual assault of a child in violation of Section 269.

"(iii) Lewd or lascivious conduct with a child in violation of Section 288.

"(iv) Continuous sexual abuse of a child in violation of Section 288.5.

"(v) The attempt to commit any offense described in clauses (i) to (iv), inclusive." (§ 1202.1, subd. (e)(5)(A).)

In the absence of an objection in the lower court, a defendant forfeits the right to challenge the trial court's failure to make statutorily-required factual findings supporting an AIDS test order pursuant to section 1202.1, subdivision (e)(5). (*People v. Stowell* (2003) 31 Cal.4th 1107, 1117.) However, the defendant may challenge the trial court's testing order on the ground of insufficiency of the evidence to support a finding of probable cause. (*People v. Butler* (2003) 31 Cal.4th 1119, 1123.)

"Probable cause is an objective legal standard—in this case, whether the facts known would lead a person of ordinary care and prudence to entertain an honest and strong belief that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim." (*People v. Butler, supra,* 31 Cal.4th at p. 1127.) If a trial court orders AIDS testing without articulating its required reasons on the record, an appellate court will presume an implied finding of probable cause, but "the appellate court can sustain the order only if it finds evidentiary support, which it can do simply from examining the record." (*Ibid*.)

An appellate court reviews the evidence de novo to determine whether the record reveals probable cause sufficient to support the testing order. (*People v. Butler*, *supra*, 31 Cal.4th at p. 1127.) If probable cause is lacking based on the appellate record, the appropriate remedy is to remand the matter for further proceedings to provide the

prosecution with the opportunity to present additional evidence that may establish the necessary probable cause. (*Id.* at p. 1129.)

### C. Analysis

Alvarez was convicted of committing a lewd or lascivious act on a child under the age of 14 (§ 288, subd. (a)), and forcible sexual penetration (§ 289, subd. (a)). Section 1202.1 requires HIV antibodies testing for convictions under sections 288 and 289 where "the court finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim." (§ 1202.1, subd. (e)(5).) The trial court did not make an explicit determination of probable cause, and Alvarez did not object below, which would have required the trial court to articulate explicit factual findings in support of its order. We conclude that the record does not contain sufficient evidence supporting the trial court's implied finding of probable cause.

M.F. recounted multiple acts of sexual abuse perpetrated by her father, any one of which would have supported Alvarez's conviction on count 1. In her closing argument, the prosecutor discussed the following acts: (1) Alvarez's act of kissing M.F. and touching her vagina over her clothes; (2) Alvarez kissing her breasts and nipples while she was sitting in a rolling chair; (3) Alvarez's act of inserting his penis into her butt cheeks, but not into her anus; and (4) other occasions where Alvarez would kiss her, touch her breasts, or fondle her vagina. The act relied upon by the prosecutor to support both counts 3 and 4 was Alvarez's act of kissing M.F., and fondling her clitoris and labia.[3]

The record does not support the conclusion that bodily fluid capable of transmitting the HIV virus was transferred during any of these offenses. Thus, a

---

[3] Counts 3 and 4 were charged in the alternative. The only distinction between the two counts depended upon the jury's finding of how old M.A. was at the time of the offense.

reasonable person would not "entertain an honest and strong belief that blood, semen, or any other bodily fluid capable of transmitting HIV ha[d] been transferred from the defendant to the victim." (*Butler, supra*, 31 Cal.4th at p. 1127.)

The Attorney General contends that there is evidence supporting the conclusion that Alvarez kissed M.F. on the lips. He directs this court to *Johnetta J. v. Municipal Court* (1990) 218 Cal.App.3d 1255 (*Johnetta J.*) for the proposition that saliva is capable of transmitting HIV. We find *Johnetta J.* factually distinguishable from the instant case.

In *Johnetta J.*, the petitioner sought a writ of prohibition against the enforcement of an order that she submit to a blood test after she bit a sheriff's deputy. The blood test was authorized by Health and Safety Code section 199.95 et seq. (*Johnetta J.*, *supra*, 218 Cal.App.3d at p. 1261.) Under the statute, HIV testing is authorized where a person was charged by criminal complaint with having "interfered with the official duties of a peace officer ... by biting ... or transferring blood or other bodily fluids on, upon, or through the skin or membranes of a peace officer [¶] ... [¶] ... [and] the court finds that probable cause exists to believe that a possible transfer of blood, saliva, semen, or other bodily fluid took place between the defendant ... and the peace officer." (Former Health & Saf. Code, § 199.97.)

Former Health and Safety Code section 199.97 did not explicitly require a finding of "good cause" to believe that the bodily fluid at issue, saliva, was capable of transmitting HIV. The statute only required a finding that there had been a possible transfer of bodily fluid. *Johnetta J.* does not stand for the proposition that the trial court may order AIDS testing under section 1202.1 upon the mere showing that there is probable cause to believe that saliva was transferred from the defendant to the victim.

The National Center for Disease Control and Prevention (CDC) has found "[n]o documented cases of HIV being transmitted through spitting as HIV is not transmitted through saliva." (https://search.cdc.gov/search/?query=HIV%20transmission&dpage=1 [as of Feb. 24, 2023].) The CDC's website further provides that, "[t]he small number of

24.

documented cases have involved severe trauma with extensive tissue damage and the presence of blood." (*Ibid*.) And, while touching can transmit HIV, "[t]he only possible risk would be if bodily fluids from a person with HIV touch the mucous membranes or damaged tissue of someone without HIV." (*Ibid*.) Here, the existing record does not support the conclusion that Alvarez's bodily fluids came into contact with M.F.; much less her mucous membranes or any damaged tissue she may have had. There simply was no testimony about any bodily fluids Alvarez may have expelled.

Following our review of the record, we are unable to conclude that substantial evidence supports the trial court's implied finding of probable cause. We will therefore remand this matter to give the prosecution the opportunity to present additional evidence on this issue, should the prosecutor elect to do so. (See *People v. Butler, supra*, 31 Cal.4th at p. 1127 [it is improper to simply strike an HIV order under the statute "without remanding for further proceedings to determine whether the prosecution has additional evidence that may establish the requisite probable cause"].) If the prosecutor declines to do so, the trial court must strike the order.

## VIII. The Section 1202.05 No-Contact Order Must be Stricken

At sentencing, the court ordered that "[i]n compliance with Penal Code section 1202.05, the defendant is to have no visitation with the victim or the victim's family members unless further ordered otherwise by the Court." The prosecutor requested that the no-visitation order be amended to a "no contact" order based upon the fact that Alvarez would be incarcerated until sometime after the expiration of the criminal protective order.

Alvarez contends, and the Attorney General concedes, that the no-contact order must be stricken. We agree as well.

While section 136.2, subdivision (i) vests the court with discretion to issue a post-judgment protective order, the order here was explicitly issued under section 1202.05. Because M.F. was over the age of 18 at the time of sentencing, the restrictions on

25.

visitation under section 1202.05 do not apply to her. (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1323 ["Nothing in the legislative history suggests any intention or expectation that [section 1202.05] would affect visitation between adult victims and their childhood abusers"].) We will therefore strike the trial court's no-contact order. At resentencing, the prosecutor may ask the trial court to consider whether a post-judgment protective order is warranted under another statute, and if so, for what duration.

## DISPOSITION

Alvarez's conviction on count 4 is reversed. The trial court's no-contact order imposed under section 1202.05 is stricken. Alvarez's sentence is vacated. The matter is remanded back to the trial court for a full resentencing on all counts. Should the prosecutor elect to proffer additional evidence concerning the need for an AIDS testing order, the trial court must conduct a hearing in accordance with section 1202.1, subdivision (e)(5)(a). Otherwise, the trial court's testing order must be stricken. In all other respects, the judgment of conviction is affirmed.

SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.

26.