Filed 8/18/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br>v.<br>JOSE LUIS DEJESUS-GALINDO,<br>    Defendant and Appellant. | A166451<br><br>(Sonoma County<br>Super. Ct. No. SCR6996011) |

Dejesus-Galindo challenges two of the eight sex crimes he was convicted of committing against three juvenile girls. He argues the prosecution cited the same testimony evidencing uncharged offenses in support of two charged offenses, and therefore the jury instruction regarding evidence of uncharged sex offenses improperly lowered the burden of proof for those two charges and confused the jury. In the alternative, he asserts a claim for ineffective assistance of counsel because his defense counsel failed to object to the offending jury instruction. Because the alleged instructional error was harmless, we affirm.

## I.    BACKGROUND

Given the nature of the claim on appeal, we need not undertake a detailed account of the facts of this case except as relevant to the issues below. We therefore summarize the facts as follows.

1

***A.***      ***The Discovery of Sexual Abuse and The Charged Crimes***

Dejesus-Galindo began a romantic relationship with S.O. in 2015. Not long thereafter, Dejesus-Galindo and his daughter, Jane Doe 2, had moved in with S.O. and her four children, including Jane Does 1 and 3.

One evening in December 2016, S.O. left the house for about 30 to 35 minutes; when she left Dejesus-Galindo and Jane Does 1 and 2 were watching a movie together. Jane Doe 1 was 6 years old at the time.

When S.O. returned home, Jane Doe 1 had wet hair and had changed into pajamas. Later that same night, Jane Doe 1 was discovered crying in the bathroom and bleeding from her vagina through her pants. After multiple attempts to elicit what happened, Jane Doe 1 told S.O. that she must have run into the door.

S.O. took Jane Doe 1 to the hospital after a feminine pad failed to stop the bleeding. The attending emergency room doctor located a clot in Jane Doe 1's vaginal vault and a "steady flow" of blood. The doctor later testified there was no external evidence of trauma and further opined there was "not a chance" that the injury was caused by a door. The hemorrhage could not be controlled, so an operation was performed to suture the wound. The operation revealed a three or four-centimeter laceration near the cervix had caused an arterial bleed.

That same night, law enforcement was notified about a potential crime against Jane Doe 1. The next day, police executed a search warrant for the family home, during which they took a swab of Dejesus-Galindo's DNA and collected Jane Doe 1's bloodied clothing and the discarded feminine pad, among other items. A detective interviewed Jane Doe 1 a few days later, but she did not disclose any crimes. Nonetheless, due to the nature of the injury and Jane Doe 1's unbelievable explanation as to how she sustained it, Jane

2

Doe 1 and her siblings were removed from the home and housed at a children's shelter.

At the children's shelter, Jane Doe 1 told a residential counselor that Dejesus-Galindo was " ' "the one who made [her] bleed." ' " Jane Doe 1 affirmed the counselor's inquiry into whether Dejesus-Galindo " ' "put his private boy parts inside [her], his penis, his penis inside [her]." ' " Jane Doe 1 further confirmed that Dejesus-Galindo had done the same thing on previous occasions and had threatened to hurt her if she told anyone. At a subsequent interview, Jane Doe 1 reaffirmed that Dejesus-Galindo had sexually assaulted her multiple times, and he was arrested.

Two years later, in June of 2018, Jane Doe 2 reported that Dejesus-Galindo abused her. Two years after that, in June of 2020, Jane Doe 3 reported that Dejesus-Galindo sexually abused her as well.

For his alleged conduct against Jane Doe 1, Sonoma County District Attorney (the DA) charged Dejesus-Galindo with three counts of sexual intercourse with a child 10 years or younger (Pen. Code, § 288.7, subd. (a);[1] counts 1, 3 and 4), one count of a forcible lewd act on a child under 14 (§ 288, subd. (b)(1); count 2), and sentence enhancements to counts 1 and 2 for infliction of great bodily injury (§ 12022.8) as well as several aggravating circumstances under section 667.61, including the commission of crimes against multiple victims (§ 667.61, subd. (e)).

As to his alleged conduct against Jane Doe 2, the DA charged Dejesus-Galindo with one count of a forcible lewd act on a child under 14 (§ 288, subd. (a); count 5) and aggravating circumstances under section 667.61. The

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

3

charged offense allegedly occurred "between June 5, 2012 and June 5, 2014" when Jane Doe 2 would have been between 10 and 12 years old.

The DA charged Dejesus-Galindo with three discrete crimes for his conduct against Jane Doe 3:  one count of a forcible lewd act on a child under 14 (§ 288, subd. (b)(1); count 6) and two counts of lewd acts on a child under 14 (§ 288, subd. (a); counts 7 and 8).  The DA also alleged that a circumstance for tying or binding the victim applied to count 6 (§ 667.61, subd. (e)(5); the tying circumstance) and that other aggravating circumstances under section 667.61 applied to all three counts.  All three offenses allegedly occurred "between December 15, 2014 and December 14, 2016" when Jane Doe 3 would have been between 9 years old and 11 years old.

## B.    *Evidence Presented at Trial*

At trial, Jane Doe 1 testified that, on the day she was hospitalized in December 2016, Dejesus-Galindo had inserted his penis inside her vagina and caused her to bleed.  A Department of Justice criminalist testified that sperm was detected on the feminine pad and underwear that Jane Doe had used and worn that night and that "possible sperm" was found on the crotch area of Jane Doe 1's pajamas.  Another criminologist testified that DNA analysis showed a high probability that Dejesus-Galindo contributed to the sperm on the feminine pad and "strong evidence" that he contributed to the male genetic material on the underwear and the pajama crotch area.

Jane Doe 1 also testified that Dejesus-Galindo had sexually assaulted her more than once, describing another incident.  Jane Doe 2 also testified that, on one occasion at her godmother's house, she woke up to Dejesus-Galindo removing her pants and underwear and then she felt his penis touching her butt.

The only direct evidence presented in support of the offenses against Jane Doe 3 (counts 6–8) was Jane Doe 3's testimony.  The prosecutor first

4

asked Jane Doe 3 about "the first time" Dejesus-Galindo made her "feel uncomfortable." Jane Doe 3 described a time when, in reaction to her asking to use his computer for homework, "[Dejesus-Galindo] sat down in the chair and sat [her] down on him, and he pulled up [pornography]" on the computer.

The prosecutor followed up by asking Jane Doe 3 whether Dejesus-Galindo ever made her feel uncomfortable by touching her. She then described an incident when Dejesus-Galindo took her into her bedroom, locked the door, tied her up with a rope, and "started rubbing" his penis against her butt. He attempted to penetrate his penis into "her body." During the sexual assault, Jane Doe 2 interrupted by knocking on the door and asking Dejesus-Galindo a question. Dejesus-Galindo responded to Jane Doe 2 and "continued to rub" himself on Jane Doe 3, but eventually he untied Jane Doe 3 and left the room.

Jane Doe 3 then affirmed that Dejesus-Galindo had "touch[ed]," "rub[bed]," and "grab[bed]" "other parts of [her] body on a different occasion," namely her bare chest and vagina. She confirmed that Dejesus-Galindo touched her in those areas "[m]ore than once," expounding it was something he did "regularly" and "[p]robably two times a week." She further affirmed that "[s]ometimes he would just touch [her] chest" and "[s]ometimes he would just touch [her] front bottom [vaginal area]" and that he would commit these acts "in different locations around the house." On cross-examination, she testified: "There was this time I remember he pulled down my pants. I'm pretty sure it was in the living room. I was like -- I wasn't laying down on the floor, but, like, I was sitting down, and he had pulled my pants down, and he was touching my front bottom."

Otherwise, Jane Doe 3 could not recall the specific times when such conduct (other than the rope incident) occurred. But she said that all these

5

"touchings" started after the initial incident when he showed her pornography and continued until she was removed from the home. She was also unable to estimate how many times Dejesus-Galindo touched her in her chest or vagina, but she stated that "not a week passed where he didn't touch me."

Moreover, Jane Doe 3 did recall "at least one other time, other than the rope incident, that [she] saw [Dejesus-Galindo's] dick." She said on that occasion Dejesus-Galindo pulled out his flaccid penis and told her to clean it with a wipe.

## C. *The Jury Instructions and the Prosecutor's Argument Relating to the Charged and Uncharged Offenses Against Jane Doe 3*

Prior to closing arguments, the trial court instructed the jury with pertinent Judicial Council Of California Criminal Jury Instructions (CALCRIM). Relevant here, the court read CALCRIM No. 220, which provides the reasonable doubt standard and CALCRIM No. 1110, which provides the elements of section 288, subdivision (a), as charged in counts 7 and 8.

The trial court also instructed the jury with CALCRIM No. 1191A, regarding the consideration of uncharged offenses as propensity evidence, as follows: "The People presented evidence the defendant committed the crime of Penal Code Section 288.7(a) and/or Penal Code Section 288(a) that were not charged in this case. These crimes are defined for you in these instructions. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. [¶] Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. If the People have not met this

burden of proof, you must disregard this evidence entirely. [¶] If you decide the defendant committed the uncharged offense, you may but are not required to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and, based on that decision, also conclude that the defendant was likely to commit and did commit the crimes alleged in counts 1 through 8 as charged here. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of any of the crimes alleged in counts 1 through 8. The People must still prove each charge and allegation beyond a reasonable doubt. [¶] Do not consider this evidence for any other purpose."

The trial court next instructed the jury with CALCRIM No. 1191B, regarding the consideration of charged offenses as propensity evidence, as follows: "The People presented evidence that the defendant committed the crimes of: [¶] Sexual intercourse with a child 10 years old or younger, in violation of Penal Code Section 288.7(a), as charged in counts 1, 3, and 4; [¶] Forcible lewd act upon a child under the age of 14, in violation of Penal Code Section 288(b)(1), as charged in counts 2 and 6; [¶] Lewd act upon a child, in violation of Penal Code Section 288(a), as charged in counts 5, 7, and 8. [¶] If the People have proved beyond a reasonable doubt the defendant committed one or more of these crimes, you may but are not required to conclude from that evidence the defendant was disposed or inclined to commit sexual offenses and, based on that decision, also conclude that the defendant was likely to commit and did commit the other sexual offenses charged in this case. [¶] If you find the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with the other evidence. It is not sufficient by itself to prove the defendant is guilty of another crime.

7

The People must still prove each charge and allegation beyond a reasonable doubt."

In his closing argument, the prosecutor tied each of the charged counts to alleged conduct. For example, the prosecutor explained that count 6 (forcible lewd act on child under age 14) was "specific to the incident where Jane Doe 3 was tied up with the rope." The prosecutor also underscored that the burden of proof for each charged crime was beyond a reasonable doubt and that the jury could only use evidence of a charged sex offense to prove the other crimes if that standard was met.

When he reached counts 7 and 8 (lewd acts on a child under age 14), however, the prosecutor explained those crimes were based on discrete but unspecified instances where Jane Doe 3 alleged that Dejesus-Galindo touched her chest and vagina. He said, "these two counts [were] different from the other counts where in the other counts . . . there [was] a specific incident . . . [¶][but with] these two charges [there was] not." He then explained to the jurors that the modified unanimity instruction set out in CALCRIM No. 3501 allowed them to convict Dejesus-Galindo if they found " 'the defendant committed at least one of these acts and [they] all agree[d] on which act he committed for each offense," or if they "all agree[d] that the People . . . proved that the defendant committed all the acts alleged to have occurred during [the alleged] time period and . . . proved that the defendant committed at least the number of offenses charged.' " He continued: "You've heard testimony, if you find it to be credible, [Dejesus-Galindo] has touched her multiple times a week for -- there wasn't a week that went by where he didn't touch her multiple times a week. And yet we have one count to decide related to the chest, we have one count to determine related to the vagina." He therefore reiterated that CALCRIM No. 3501 "accounts for this."

8

Shortly thereafter, the prosecutor turned to "one [thing] that [he] [had]n't talked about, and that [was] the Evidence of Uncharged Sex Offenses" and CALCRIM No. 1191A.[2]  He stated:  "We did hear some evidence related to crimes that were not charged.  In this case, we just finished talking about . . . that.  Jane Doe 3 talked about there would be a lot of instances that, if you find them to be true, occurred and are not a charged incident.  [¶]  Also, you might recall Jane Doe 1 talking about an incident where she was taken to [Dejesus-Galindo's] room . . . and essentially sexually assaulted her again.  [¶]  That's not a charged offense, so what do you do with that?  [CALCRIM No.] 1191A talks to us about how to handle that."  The prosecutor then read portions of that instruction, noting that the alleged uncharged crimes were under sections " '288.7(a) and 288(a)' " and stressing, "This is the only area for the case where the proof level is not beyond a reasonable doubt."

The jury found Dejesus-Galindo guilty on all counts and found all the sentencing enhancements true.  The trial court sentenced him to serve 125 years to life, plus life without the possibility of parole.  Dejesus-Galindo appealed.

---

[2] While walking through the evidence and elements of the charged crimes, the prosecutor also addressed certain uncharged *conduct* without stating they were evidence of uncharged *offenses*.  Specifically, he noted Jane Doe 3's testimony that Dejesus-Galindo showed her pornography and how "that was the entry into the downhill slope of his molest."  The prosecutor continued:  "So there's no charge related to this, but it is something to think about as far as, when you want to talk about credibility of a witness and what a – you know, a kid can say and make up, this is a pretty specific and interesting incident that makes a lot of sense with the rest of the evidence."

## II. DISCUSSION

Dejesus-Galindo asserts counts 7 and 8 must be reversed because the trial court erred by instructing the jury with CALCRIM No. 1191A regarding Jane Doe 3's testimony. We affirm because any potential error was harmless beyond a reasonable doubt.[3]

### A. *Legal Principles*

Evidence Code section 1108, subdivision (a), permits, when proper, evidence of uncharged sexual offenses to prove propensity. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160 (*Villatoro*).) "CALCRIM No. 1191A is an appropriate instruction" when *uncharged* offenses are properly offered as propensity evidence. (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 502 (*Gonzales*).) In contrast, CALCRIM No. 1191B is the appropriate instruction when *charged* offenses are offered as propensity evidence because charged offenses offered as propensity evidence must be proven beyond a reasonable doubt. (*Villatoro*, at p. 1161; *People v. Cruz* (2016) 2 Cal.App.5th 1178, 1186–1187.)

We review a claim of instructional error de novo. (*Mitchell*, *supra*, 7 Cal.5th at pp. 579.) "In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine

---

[3] We hold Dejesus-Galindo's claim of instructional error was not forfeited. Although his defense counsel failed to object below, Dejesus-Galindo asserts the error deprived him of due process. If true, this would affect his substantial rights. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579–580 (*Mitchell*).) We therefore review his claim on the merits. (*Ibid.*) We therefore need not reach Dejesus-Galindo's ineffective assistance of counsel claim.

whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*Ibid*; see *People v. Smithey* (1999) 20 Cal.4th 936, 963 ["If a jury instruction is ambiguous, [the reviewing court will] inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction."].)  We otherwise presume that jurors understood, correlated, and duly followed the court's instructions.  (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Instructional error is reversible per se if it " 'vitiates *all* the jury's findings.' " (*People v. Aranda* (2012) 55 Cal.4th 342, 365 (*Aranda*).)  Otherwise, harmless-error analysis applies.  (*Ibid.*)  The harmless beyond a reasonable doubt standard is typically applied in cases where federal constitutional errors are made.  (*People v. Jones* (2018) 28 Cal.App.5th 316, 332 (*Jones*); see *Aranda*, at pp. 365–366.)

## B.     Analysis

Dejesus-Galindo faults the trial court for not "identifying what evidence it was referring to" when it instructed the jury on CALCRIM No. 1191A. [4] The gravamen of his argument is that Jane Doe 3's "touchings" testimony in support of counts 7 and 8—i.e., that Dejesus-Galindo touched her chest and vagina an undefined number of times but "[m]ore than once" and "[p]robably

---

[4] We observe, however, that Dejesus-Galindo explicitly does *not* challenge the prosecution's use of uncharged offenses against Jane Doe 1 as propensity evidence, and therefore tacitly acknowledges that the CALCRIM No. 1191A instruction was proper, at least as applied to those uncharged offenses. Accordingly, Dejesus-Galindo's reliance on authorities in which the appellant claimed that the trial court erroneously refused to give a requested instruction (*Logacz v. Limansky* (1999) 71 Cal.App.4th 1149, 1155–1156), gave a defunct instruction (*Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670), or improperly took an issue away from the jury in instructing the jury as a matter of law (*Clement v. State Reclamation Board (*1950) 35 Cal.2d 628, 644) is misplaced.

two times a week"—was the same testimony the prosecution presented in support of the alleged uncharged offenses against Jane Doe 3. Because the CALCRIM No. 1191A instruction permitted the jury to consider evidence of uncharged offenses if the prosecution proved "by a preponderance of the evidence" that Dejesus-Galindo committed them, Dejesus-Galindo contends the jury was "[a]llow[ed] . . . to apply conflicting standards to the same acts alleged both as charged and uncharged offenses," which "created confusion, lowered the prosecution's burden of proof, and violated [his] Fourteenth Amendment right to due process." (Boldface omitted.)

The record shows that counts 7 and 8 and the uncharged offenses against Jane Doe 3 were premised on the same testimony regarding an unspecified number of acts. Regarding counts 7 and 8, the prosecutor restated Jane Doe 3's "testimony . . . [Dejesus-Galindo] ha[d] touched her multiple times a week for -- there wasn't a week that went by where he didn't touch her multiple times a week." Relying on CALCRIM No. 3501, he assured the jury that it could convict on counts 7 and 8 despite Jane Doe 3's inability to estimate the exact number of times Dejesus-Galindo committed such sexual misconduct. He said: "You pick a — assuming you find her testimony to be true that this happened that — as many times. Let's just say — take one or two weeks, for example. [¶] All agree that this happened the first time, or you can all agree that it happened the last time, or you can take the tenth time. It doesn't matter. As long as you find that there was -- that time occurred and you all agree to that time."

Immediately after discussing counts 7 and 8 and the modified unanimity rule, the prosecutor stated: "We did hear some evidence related to crimes that were not charged. In this case, *we just finished talking about some of that*. Jane Doe 3 talked about there would be a lot of instances that,

12

if you find them to be true, occurred and are not a charged incident." (Italics added.)

Thus, Jane Doe 3's testimony about Dejesus-Galindo touching her chest and vagina areas on numerous unspecified occasions was the basis both for the alleged acts charged as counts 7 and 8 *and* for the uncharged offenses against Jane Doe 3.

Although the prosecutor did not say the same criminal acts support counts 7 and 8 and the uncharged offenses,[5] and at no time conflated the burden of proof necessary to convict Dejesus-Galindo on counts 7 and 8 with the burden of proof applied to the limited use of the uncharged offenses, the same testimony about an unspecified number of "touchings" was the only proffered evidence of the charged and uncharged acts. In other words, neither Jane Doe 3 nor the prosecution were able to distinguish the acts underlying counts seven and eight from the acts underlying the uncharged offenses.

Neither party has cited a case dealing with such circumstances. *Gonzales, supra,* 16 Cal.App.5th at page 496, on which both parties rely, merely addressed a situation in which "[t]he prosecution introduced evidence of uncharged sex offenses defendant committed against the victim through

---

[5] We understand the prosecutor's theory to be that Jane Doe 3's "touchings" testimony was sufficient evidence of *at least three* offenses under the modified unanimity instruction. But because the DA only charged two of the potential offenses—i.e., counts 7 and 8—the jury needed only find, beyond reasonable doubt, one discrete occurrence when Dejesus-Galindo touched her chest area and one discrete occurrence when Dejesus-Galindo touched her vagina. Accordingly, to the extent the jury found by a preponderance of the evidence that *an additional* uncharged offense occurred *based on the same testimony that Dejesus-Galindo committed an unspecified number of "touchings,"* then the jury could consider those uncharged offenses as propensity evidence under CALCRIM No. 1191A.

13

the victim's own testimony, not through the testimony of third parties." Nonetheless, the majority and concurring opinions provide a useful dialectic regarding the applicability of CALCRIM No. 1191A and harmless error analysis.

In *Gonzales*, the defendant was charged with 6 sexual offenses against one child who was 10 years old or younger. (*Gonzales*, *supra*, 16 Cal.App.5th at pp. 497–498.) Each offense was tied to a specific, discrete act. (*Ibid*.) The jury was also presented with evidence of uncharged conduct that included: an incident of sexual penetration; an incident when the victim's mother found defendant locked in a bedroom with the child; an incident in which a family friend discovered defendant showering with the victim and her brother; an incident when the defendant exposed himself to the victim. (*Id*. at p. 498.) The child further testified that she "could not remember how many times Gonzales put his penis in her mouth over the course of the years he lived with her family. She guessed Gonzales put his penis in her vagina three times." (*Ibid*.) On appeal, "Gonzales objected to the admission of uncharged acts of sexual misconduct . . . under section 352," but "the gravamen of Gonzales's argument [was] that CALCRIM No. 1191 should be given only where the evidence of uncharged sexual misconduct comes from third parties, and not from the victim-witness herself." (*Id*. at pp. 500–501.)

The majority rejected this argument, noting that "[n]othing in section 1108 limits its effect to the testimony of third parties." (*Gonzales, supra,* 16 Cal.App.5th at p. 502.) Moreover, while acknowledging that a victim supporting her own testimony of charged sexual offenses with testimony of uncharged sexual offenses was "not as probative as similar testimony from a third party," the court held "it [was] still probative." (*Ibid*.) The majority also rejected the defendant's contention that the instruction "likely resulted

14

in the jury misapplying the burden of proof for the charged offenses" because CALCRIM No. 1191A instructs the jury that the uncharged offenses are only one factor to consider and that the People must still prove the charged offenses beyond a reasonable doubt. (*Ibid.*) In any event, the majority determined that any error was "harmless by any standard" because the victim's "testimony was direct, unflinching, and remarkably articulate" as well as corroborated by other evidence. (*Id.* at pp. 502–503.)

Justice Perren disagreed that CALCRIM No. 1191 was properly given, stating that "a problem arises where . . . the proffered evidence consists solely of the victim's own testimony." (*Gonzales*, *supra*, 16 Cal.App.5th at pp. 505–506 (conc. opn. of Perren, J.).) Under those circumstances, Justice Perren noted that the victim's "credibility was the core of the proof," yet the jury "only had to be satisfied by a preponderance of the evidence of [the victim's] veracity to prove the commission of the uncharged offenses in order to prove the charged offenses." (*Id.* at pp. 505–506).[6] Justice Perren called the instruction's application to the fact pattern an "exercise in 'mental gymnastics.' " (*Id.* at p. 506.) Like the majority, though, Justice Perren found that "Gonzales was not prejudiced by the giving of CALCRIM No. 1191A" because the instruction was clear as to the standard of proof for the charged offenses and because "the evidence supporting the charged offenses was substantial." (*Id.* at p. 507.)

We agree with the majority in *Gonzales* that "[n]othing in section 1108 limits its effect to the testimony of third parties." (*Gonzales*, *supra*, 16 Cal.App.5th at p. 502; see *People v. Panighetti* (2023) 95 Cal.App.5th 978, 998 ["There is nothing in [*People v. Reliford* (2003) 29 Cal.4th 1007] that suggests

---

[6] The majority acknowledged Justice Perren's "well stated" concerns. (*Gonzales*, *supra*, 16 Cal.App.5th at p. 496 (majority opn. of Gilbert, P.J.).)

the analysis is limited to instructions regarding uncharged crimes committed against persons other than the victim."].) But given the nature of the underlying testimony from a single victim-witness in the instant matter regarding the same group of acts used to prove both an indeterminate number of acts for two charged counts as well as unspecified and uncharged section 288, subdivision (a), offenses, we are concerned about the propriety of instructing a jury on CALCRIM No. 1191A, without additional clarifying instructions.

Here, not only was Jane Doe 3's testimony the only proffered evidence of uncharged offenses against her, it was testimony of an indeterminate number of acts (see CALCRIM No. 3501), two of which were charged as counts 7 and 8. The jury was told it could apply a lesser burden of proof to Jane Doe 3's testimony about unspecified and uncharged section 288, subdivision (a), offenses, and then consider whether that evidence supported findings of proof beyond a reasonable doubt for the two charged section 288, subdivision (a), offenses supported by her same testimony. Neither the judge, when instructing the jury, nor the prosecutor during his closing argument, however, clarified to the jury that the uncharged offenses must be the third (or greater) number of offenses supported by Jane Doe 3's testimony. We are skeptical that a jury can parse such a fact pattern, correlate the instructions to the unspecified charged and uncharged offenses, and then faithfully apply the instructions, especially without some guidance from the court.

But even if this amounted to federal constitutional error, that does not end the matter.

We reject Dejesus-Galindo's contention that the CALCRIM No. 1191A instruction lowered the prosecution's burden of proof and therefore " 'vitiate[d] *all* the jury's findings.' " (*Aranda*, *supra*, 55 Cal.4th at p. 365; cf.

16

*Gonzales, supra,* 16 Cal.App.5th at p. 507 (conc. opn. of Perren, J.).) The trial court's instructions made clear that each charged offense, including counts 7 and 8, had to be proven beyond a reasonable doubt. Indeed, the prosecutor and the CALCRIM No. 1191A instruction itself reminded the jury that each offense must be proved beyond a reasonable doubt. Thus, "like most errors of constitutional dimension, [the asserted error] is amenable to harmless error review." (*Aranda,* at p. 365 [error in failing to give standard reasonable doubt instruction was harmless beyond a reasonable doubt]; see *Villatoro, supra,* 54 Cal.4th at p. 1168 [any error in giving modified instruction of uncharged sex offenses was harmless]; *Jones, supra,* 28 Cal.App.5th at pp. 330–332 [finding any error harmless because "the instruction did not have the practical effect of lowering the standard of proof"].) Thus, we apply harmless-error analysis.[7]

Here, any potential error was harmless beyond a reasonable doubt.

First, Jane Doe 3's testimony about the multiple "touchings" was unequivocal. (See *Gonzales, supra,* 16 Cal.App.5th at p. 502 (majority opn. of Gilbert, P.J.).) She testified that Dejesus-Galindo touched, rubbed, and/or grabbed her chest and vagina areas "[m]ore than once" and "[p]robably two times a week," emphasizing that "not a week passed where he didn't touch me." She later affirmed that "[s]ometimes he would just touch [her] chest" and "[s]ometimes he would just touch [her] front bottom [vaginal area]." Moreover, on cross-examination she did detail a time when Dejesus-Galindo "pulled down [her] pants . . . in the living room . . . and he . . . touch[ed] [her] front bottom," meaning her vagina. Although she was generally unable to

---

[7] We decline Dejesus-Galindo's invitation to adopt the position of the dissenting opinion in *Jones, supra,* 28 Cal.App.5th at page 341 and find the instructional error reversible per se.

17

give specifics about the charged offenses that occurred when she was around 10 years old (other than the rope incident charged as count 6), the jury was free to view this as candidness.

Second, in addition to clearly stating that every charge had to be proven beyond a reasonable doubt, the trial court also explained the limited purpose for which the proffered propensity evidence could be considered. As read, the instruction specifically provided, in part: "If you conclude that the defendant committed the uncharged offenses, that conclusion is *only one factor to consider* along with all the other evidence. *It is not sufficient by itself to prove that the defendant is guilty* of any of the crimes alleged in counts 1 through 8. *The People must still prove each charge and allegation beyond a reasonable doubt.* [¶] Do not consider this evidence for any other purpose." (Italics added.) The court's clear instruction mitigates any prejudice. (Cf. *Gonzales*, *supra*, 16 Cal.5th p. 507 [agreeing with majority on harmless error in part because "the instructions made clear that the charged offenses had to be proven beyond a reasonable doubt."] (conc. opn. of Perren, J.).)

Third, the trial court properly instructed the jury on CALCRIM No. 1191B regarding the use of charged offenses found beyond a reasonable doubt as propensity evidence. Dejesus-Galindo does not challenge this instruction. The jury found Dejesus-Galindo guilty of counts 1 through 6. Dejesus-Galindo does not challenge any of those convictions. The evidence in support of those charged crimes was substantial. There was DNA analysis connecting Dejesus-Galindo to the male genetic material on the feminine pad and pajama crotch that Jane Doe 1 used and wore on the night she was hospitalized. There was also Jane Doe 1's testimony that Dejesus-Galindo had sexually assaulted her more than once, and there was Jane Doe 2's

18

testimony that Dejesus-Galindo rubbed his penis on her backside in a nearly identical manner as the incident Jane Doe 3 described in support of count 6. We need not belabor the point. The evidence in support of the other guilty convictions found beyond a reasonable doubt was overwhelming, and the jury was entitled to consider those offenses as propensity evidence.

We are not persuaded that a single jury note about the tying circumstance connected to count 6 indicates the jury was on the fence regarding counts 7 and 8 (or count 6, which Dejesus-Galindo does not challenge). The jury asked the court whether it could find that tying circumstance under section 667.61, subdivision (e)(5), not true "AND" also find Dejesus-Galindo guilty of the count 6 offense. If anything, the note indicated the jury was inclined to find him guilty of count 6.

Also, defense counsel raised several issues on cross-examination with Jane Doe 3's testimony about the alleged rope tying which would not cast reasonable doubt on the other charges. For instance, Jane Doe 3 testified there was only one rope, yet Dejesus-Galindo was able to tie each of her wrists to the top half of a bunk bed and each ankle was also tied. Thus, although a jury note may "indicate that 'deliberations were close,'" it also reveals the jury thoroughly examined and considered all the evidence. (*People v. Zaheer* (2020) 54 Cal.App.5th 326, 340.) Dejesus-Galindo's argument is therefore self-refuting. If the jury note suggests Jane Doe 3's credibility was not easily resolved as to the specific allegation underlying count 6, then it strains credulity that the jury found her guilty beyond a reasonable doubt on counts 7 and 8 by relying on her generic testimony about the uncharged offenses as propensity evidence.

In view of the trial court's admonishment that every charge needed to be proven beyond a reasonable doubt, Jane Doe 3's testimony, and the

19

substantial evidence of Dejesus-Galindo's crimes against Jane Does 1 and 2 which the jury was permitted to consider as propensity evidence, any potential error was harmless beyond a reasonable doubt.

### III. DISPOSITION

The judgment is affirmed.

\*

_____

Clay, J.

WE CONCUR:

_____

Streeter, Acting P.J.

_____

Goldman, J.

A166451/*People v. Dejesus-Galindo*

---

\* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## *People v. Jose Luis Dejesus-Galindo (A166451)*

Trial Court:          Sonoma County Superior Court

Trial Judge:          Hon. Robert M. Laforge

Attorneys:

Candace Hale under appointment by the First District Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General of California, Lance Eric Winters, Chief Assistant Attorney General, Jeffrey Michael Kanter Laurence, Senior Assistant Attorney General, Sarah Jean Farhat, Deputy Attorney General, Kevin J. Lindsley, Deputy Attorney General for Plaintiff and Respondent.